## 12447

### JENNINGS v. CLOVER LEAF LIFE & CASUALTY CO. *ET AL.*

#### (143 S. E., 668)

1. INSURANCE—MISSTATEMENT OF AGE, FAILURE TO GIVE REQUIRED NOTICES, AND LIMITATION OF RECOVERY TO ONE-TENTH OF AMOUNT OTHERWISE PAYABLE FOR DISABILITIES HELD AFFIRMATIVE DEFENSES WHICH INSURER HAD BURDEN OF PROOF.—Insured's misstatement of his age in application for accident and life policy, failure to give notices required by policy, and insurer's claim that insured's recovery was limited to 10 per cent. of amount otherwise payable for disabilities because disability resulted from injuries intentionally inflicted by third person were affirmative defenses, and burden was on insurer to establish them by preponderance of testimony.

2. INSURANCE—KNOWLEDGE OF LIFE AND ACCIDENT INSURER'S AGENT IS KNOWLEDGE OF INSURER, AND INSURER IS BOUND THEREBY.—Knowl-

edge of life and accident insurance company's agent is knowledge
of the company, and company is bound by it.

3. INSURANCE—WHERE AGENT MUST HAVE KNOWN AGE WAS MIS-
STATED IN APPLICATION AND COMPANY PAID AT LEAST TWO BENE-
FITS, IT WAIVED MISSTATEMENT OF AGE AS GROUND FOR AVOIDING
POLICY.—Where insurer's agent must have known from the appear-
ance of plaintiff that insured had long since passed the age of 48
stated in application for life and accident policy and plaintiff de-
nied having stated his age as 48, and having signed the applica-
tion, and company had paid at least two benefits under policy, it
waived misstatement of age as ground for avoiding policy.

4. INSURANCE—SUBSTANTIAL COMPLIANCE WITH LIFE AND ACCIDENT
INSURANCE POLICY PROVISIONS RESPECTING NOTICES IS SUFFICIENT.
—A substantial compliance with life and accident insurance policy
provisions respecting notices is all that is required.

5. INSURANCE—THAT INSURED WAS CONFINED TO BED FOR FIVE WEEKS
BY INJURIES HELD TO EXCUSE MAKING OF REQUIRED WRITTEN RE-
PORT FOR FIRST 30 DAYS.—That insured was confined to his bed
for five weeks as result of injuries *held* to excuse him for first
30 days from furnishing written report stating his condition and
probable duration of his disability, under policy requirement for
such report every 30 days where disability continues more than
30 days.

6. INSURANCE—INSURER'S ATTEMPT TO ADJUST LOSS HELD WAIVER OF
INSURED'S FAILURE TO GIVE NOTICE REQUIRED BY ACCIDENT POLICY.
—Insurer's letter attempting to adjust claim and making an offer
*held* to constitute waiver of insured's failure to give notice required
by accident policy.

7. INSURANCE—WAIVER OF ACCIDENT POLICY REQUIREMENTS RESPECT-
ING NOTICE IS FOR TRIER OF FACT.—Question of accident insurer's
waiver of requirements of policy is for the jury or for the Court
where jury trial has been waived.

8. INSURANCE—RECOVERY FOR INJURIES SUSTAINED BY BEING SHOT IN
SCUFFLE WHEN ATTACKED HELD NOT LIMITED BY POLICY PROVISION
AS BEING "INTENTIONAL INJURY BY ANOTHER."—Where insured
was shot in the scuffle resulting when he was attacked and beaten
with a pistol used as a club, *held,* that recovery on accident policy
for injury sustained was not limited to 10 per cent. of amount
otherwise payable for such injuries as injury intentionally inflicted
on insured by any other person, notwithstanding assailant de-
clared he had come to kill insured, since his evident purpose must
have been to knock insured unconscious and then rob him.

On Petition for Rehearing

9. APPEAL AND ERROR—QUESTION, NOT RAISED BY EXCEPTION ON AP-
PEAL, WILL NOT BE CONSIDERED ON REHEARING.—Question presented
by petition for rehearing, not properly raised by any exception on
appeal, will not be considered.

Before Moss, J., County Court, Orangeburg, August,
1927.    Affirmed.

Action by Gade Jennings against the Clover Leaf Life &
Casualty Company and others.    Judgment for plaintiff, and
defendant appeals.

The following is the decree of Judge Moss, in the Court
below:

This is an action on a life and accident policy to recover
certain benefits under the several schedules set forth in
policy issued by the defendant Clover Leaf Life & Casualty
Company to plaintiff.

Since then the Clover Leaf Life & Casualty Company
has merged with the defendant American Bankers' Insur-
ance Company.

This case was originally set for trial in the County Court
for Orangeburg County on June 15, 1927, but by agreement
of counsel the case was marked heard, jury trial waived,
and the whole case, both law and fact, was submitted to
me for decision.

The defendants admit liability under said policy, but seek
to defeat recovery on three grounds:  (1) "Misstatement
of Age as Avoiding Policy," (2) "Failure to Give Notices
Required by Policy," and (3) "The Invoking of 'Section
B' Under Agreements and Conditions Limiting the Re-
covery to One-Tenth of the Amount Otherwise Payable for
Disabilities Under Policy."

The plaintiff offered testimony in support of the allega-
tions of his complaint, but the defendants offered no testi-
mony, contending themselves with the offering in evidence
of certain notices and letters when the witnesses for plain-
tiff were under cross examination.

It will be observed at the outstart that the three grounds invoked are affirmative defenses, and the burden is on the defendants to establish same by the preponderance of the testimony. *Frierson v. U. S. Casualty Co.*, 100 S. C., 162; 84 S. E., 535. *Huguenin v. Continental Casualty Co.*, 94 S. C., 138; 77 S. E., 751, and *U. S. Travellers' Ins. Co. v. McConkey*, 127 U. S., 661; 8 S. Ct., 1360; 32 L. Ed., 308.

The three defenses will be considered in the following order:

I. "Misstatement of Age as Avoiding Policy."

The application has the plaintiff's age at 48 years. He denies that he made any statement as to his age, and also denies that he signed the application. This is not controverted in the testimony.

This was apparently a wild guess on the part of the agent as any man with any judgment at all would know at a glance that Jennings had long since passed the age of forty-eight. His wife was 75 and the agent put her down 44.

Knowledge of the agent is knowledge of the company, and the company is bound by it.

At least two benefits have been paid by the company as well as the tender set up in its answer. · This, under the many decisions of our Court, would constitute waiver.

Further, this defense is precluded by the Sections 4101 and 4102 of Code, Vol. 3, and by the case of *Owen v. Bankers' Life Ins. Co.*, 84 S. C., 253; 66 S. E., 290; 137 Am. St. Rep., 845, construing same.

The force of the *Owen case* is admitted, but it is contended that it is not applicable because the policy in question is not a life policy. A reading of the policy shows that it is a life policy with accident features, and regardless of this distinction, we think it applies to the present contract, but if it is held not to apply, there is an abundant · evidence of waiver.

II. "Failure to Give Notices Required by Policy."

A substantial compliance is all that is required.

4–6 Agreement No. 3 requires written notice to the company within 90 days from the date of the injury. Dr. Stuckey's report of date January 13th fully and completely meets this requirement.

Agreement No. 2 requires that if the insured is disabled by injury for more than 30 days, he or his representative shall furnish the company, every 30 days, with a report fully stating the condition of the insured and the probable duration of his disability.

The fact that Jennings was confined to his bed for five weeks would excuse him for the first 30 days, and the report of January 11th, the letter written by Dr. Stuckey for Jennings on January 24th, and the letter of John S. Bowman, written March 14th, answer very fully this requirement. *Frierson v. Casualty Co.*, 100 S. C., 162; 84 S. E., 535.

The doctrine of waiver is here also invoked.

The letter of April 6th, attempting to adjust the loss and making an offer as well as the tender and other acts set up in answer constitute clear waiver.

There is no evidence that the company has suffered any prejudice, and besides the burden is on the defendants to show noncompliance and nonfulfilment, and they have offered no testimony.

"Failure to give notice of the casualty, * * * required by the" policy "contract * * * is an affirmative defense to be proved by the defendant." *Huguenin v. Casualty Co.*, 94 S. C., 138; 77 S. E., 751.

The report of January 13, 1927, by Dr. Stuckey shows that three premiums were paid during the months of December and January, 1927. Can there be any stronger evidence of waiver?

We have been unable to discover upon what theory the premiums paid by the plaintiff during the entire period of the policy contract were offered to be returned, but it seems to us that such act on its part would constitute waiver under all three questions here discussed, and waiver under all the decisions of all the Courts is for the jury, and in this case for the Court, as jury trial has been waived.

III. Does Section "B" under "Agreements and Conditions" Limit the Recovery to One-Tenth of the Amount Otherwise Payable for Such Injuries?

Before discussing this ground, the Court makes the observation that the answer of the defendants tendering the sum of $59.10 for what is therein denominated "unearned premiums thus far paid," and the admission that the plaintiff is entitled to one-tenth of the amount asked · ($500) admits liability to the amount of $109.10.

The Court will now proceed to a discussion of the third ground.

The solution of the question is dependent upon the intention of the person making the assault.

It is held in the case of *Travellers' Protective Ass'n v. Fawcett*, 56 Ind. App., 111; 104 N. E., 991, that "where the issue is whether an injury to insured in an accident policy was intentionally inflicted by a third person, the intention of the third person is alone controlling." It is held in the case of *Interstate Business Men's Ass'n v. Ford*, 161 Ky., 163; 170 S. W., 525, that: "An insured who is killed by robbers meets death by 'external, violent, and accidental means.' "

In the case of *Union Accident Co. v. Willis*, 44 Okla., 578; 145 P., 812; L. R. A., 1915-D, 358, it is held: "An accident policy, excluding injuries intentionally inflicted held not to exclude recovery where insured died from a fall due to a blow struck by another, and where the blow, but not

the fatal result, was intentional." Here the party was felled by a blow and in falling his head hit the cement sidewalk and was thus fractured and produced death.

"Printed insurance contracts prepared by experts in any respect ambiguous or capable of two meanings must be construed in favor of the assured." *Kempf v. Equitable Life Assurance Society* (Mo. App.), 184 S. W., 133.

The Courts from various jurisdictions in construing policies containing this unjust and drastic provision have sought and have found ways to get around it.

For instance, in the case of *American Accident Co. v. Carson,* 99 Ky., 441; 36 S. W., 169; 34 L. R. A., 301; 59 Am. St. Rep., 473, the policy is identical with the one under consideration. Carson was intentionally killed by one Jesse Burton, and the question in the case was whether the word "injuries" in the exemption clause included the word "death." It was held that it did not, and beneficiary was allowed to recover. To the same effect is the case of *Interstate Business Men's Ass'n v. Dunn,* 178 Ky., 193; 198 S. W., 727; 6 A. L. R., 1333, and many other cases annotated in 6 A. L. R., 1338.

Annotation, 20 A. L. R., 1123, deduced from a study of all the cases from all the Courts of the land, reads as follows: "It is a well-established rule that where insured is intentionally injured by another, and the injury is not the result of misconduct or an assault by the insured, but is unforeseen in so far as he is concerned, the injury is accidental within the meaning of accident policies," citing various authorities by the federal Supreme Court and seventeen state Supreme Courts.

"And it has been held that injury was accidental as to the insured, although it was intentional on the part of a burglar, who shot him while they were scuffling together." *Allen v. Travellers' Protection Ass'n,* 63 Iowa, 217; 143 N. W., 574; 48 L. R. A. (N. S.), 600, and in the case of

*Collins v. Fidelity & Co.,* 63 Mo. App., 258, "and the injury has been held accidental where the insured was attacked unexpectedly, without provocation, by one who attempted to assassinate him."

At page 442, Vol. 1, Corpus Juris, we read: "The existence of an intent on the part of the person inflicting the injury is necessary, and this intent must be to inflict the injury actually inflicted," citing *Orr v. Travellers' Ins. Co.,* 120 Ala., 647; 24 So., 997. And: "That where death ensues from the injury, it is necessary that the person inflicting the injury should have had the intent to kill." Now we think the converse of this proposition should be equally true. If the person making the attack intended to kill, he certainly did not have the intent to commit a slight injury. The declaration of the assailant in this case was, "Give up, I have come to kill you."

It is also laid down at page 510 of the same valuable work that it is a question of fact for the jury to decide whether the injury resulted from some cause excepted in the policy, such as whether the injuries were self-inflicted or inflicted intentionally by a third person, citing *U. S. Travellers' Ins. Co. v. McConkey,* 127 U. S., 661; 8 S. Ct., 1360; 32 L. Ed., 308, and numerous other cases.

We think that the facts of the instant case bring it squarely within the facts and principles of the foregoing decided cases.

It is clear that the assailant did not intend to shoot Jennings because, if he had, he would have shot him as soon as he opened the door. It is clear from the testimony, and I so find as a matter of fact, that the pistol shot wound was caused in the scuffle, was an accident, and was the producing cause of the disabilities. Some moments after the attack was made, the plaintiff remembers hearing the report of a pistol, but did not know he had been shot for several hours

thereafter. A portion of a pistol was found in the plaintiff's blood, so the attack was made by striking, and the pistol discharged by accident in the scuffle.

Although the assailant declared that he had come to kill plaintiff, the purpose must have been to knock him unconscious and then rob him, as there was no ill will or bad blood or difficulties which would lead to a fatal attack. If the intention were to rob, then the blow on the head and pistol shot wound would have to be held incidental and accidental. If the intention was to kill with blunt instrument, then the pistol shot would be held to be accidental. If the assailant intended to kill, then he cannot be held to have intended to commit the injuries contemplated by the policy contract. In order for the provision to embrace death, the policy must so state. The wound on the head was of little consequence, and the wound in the abdomen is the producing cause of the disabilities, and intent of the assailant did not produce the disabilities.

The facts of the case read in the light of the principles deduced from the decided case make it imperative that the three grounds be overruled, and it is so ordered.

I find as a matter of fact that the following is a correct statement of benefits due under policy to plaintiff:
Period while in hospital:

Loss of time Schedule C, November 11th to November 25th, 2 weeks, at $25.00 ............$  50.00
Health Ins., Schedule F, November 11th to November 25th, 2 weeks, at $25.00 ...........   50.00

Second period:
Loss of time, Schedule C, November 25, 1926, to December 16, 1926 .....................   37.50
Health Ins., Schedule F, November 25, 1926, to December 16, 1926 .....................   37.50

Third period:

Loss of time, Schedule C, December 16, 1926, to
    March 28, 1927 ........................ 181.25

Health Ins., Schedule F, 8 weeks............. 50.00

    Total  ..............................$406.25

I find from the testimony that the plaintiff is entitled to recover of the defendants the sum of $406.25, together with the costs of this action.

It is therefore ordered that the plaintiff have judgment against the defendants for the sum of $406.25, together with costs, and that judgment be entered accordingly.

*Messrs. J. B. McLauchlin* and *Wolfe & Berry,* for appellants.

*Mr. John S. Bowman,* for respondent.

May 11, 1928.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The judgment of the County Court for Orangeburg County is affirmed for the reasons stated in the decree of his Honor, Judge Moss.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and CARTER concur.

MR. JUSTICE COTHRAN (dissenting): This is an action upon an insurance policy, issued by the defendant to the plaintiff, on March 24, 1924, indemnifying him (in the sum of $500 for the first month, and increasing at the rate of $50 per month until the maximum sum of $750 is attained) "* * * against death or disability resulting directly, and exclusively of all other causes, from bodily injury sustained solely through external, violent, and accidental means, * * * and against death and disability from any bodily disease or illness."  As the complaint alleges, the policy "provided indemnity therein for *loss of time caused by accidental means, and for loss of time caused by illness*"—a construction of the policy which I think is entirely correct.

The policy contains separate and distinct provisions gauging the indemnity for a disability resulting from *accidental causes,* and the indemnity for a disability resulting from *disease or illness.*

Paragraph C.   For a disability resulting from *accidental causes,* which wholly and continuously should "disable and prevent the insured from performing any and every duty pertaining to any business or occupation" (under the heading "Total Loss of Time"), the indemnity is fixed at $50 per month for the period during which the disability may continue.

Paragraph D.   For a disability resulting from *accidental causes,* which wholly and continuously should "disable and prevent the insured from performing one or more important daily duties pertaining to his occupation, or in the event of like disability immediately following total loss of time" (under the heading, "Partial Loss of Time"), the indemnity is fixed at $25 per month, not exceeding 6 consecutive months.

Both indemnities, of course, are limited to the amount fixed in the policy.

Paragraph F.   For a disability resulting from *disease or illness,* "during which the insured shall be necessarily and continuously confined to the house, and therein regularly visited by a legally qualified physician, and wholly disabled and prevented by bodily disease or illness, from performing any and every duty pertaining to any business or occupation" (under the heading, "Health Insurance, Total Loss of Time"), the indemnity is fixed at $50 per month, for a period not exceeding 6 months.

Paragraph G.   "Or for a period not exceeding 2 consecutive months of convalescence, immediately following such confinement in the house, or by reason of any nonconfining illness, during which the insured shall be regularly attended by such physician, and wholly disabled and prevented from performing any and every duty pertaining to any business

or occupation" (under the heading, "Health Insurance, Partial Loss of Time"), the indemnity is fixed at $25 per month, for a period not exceeding 2 months.

It is thus clear that the policy provides indemnity for a disability resulting from *accidental causes,* and a disability resulting from *disease or illness,* and total and partial disability in each case.

The evidence tends to show that on the night of November 12, 1926, 2 years and 8 months after the policy became effective, the plaintiff was alone in his home. In the early part of the night someone came up into his yard and shouted, "Hello"; the plaintiff called to know who it was; the intruder gave the name of the plaintiff's son-in-law, and was let into the house by the plaintiff; as soon as he entered, the man (who was not the son-in-law, and does not appear to have been identified), exclaimed "Give up, I am going to kill you tonight." He attacked the plaintiff, beating him over the head with a pistol, knocked him down, shot him, and after a scuffle with the plaintiff, in the darkness, escaped. The plaintiff was carried to the hospital, operated upon, detained there about three weeks, and treated "off and on" by the physician for several weeks thereafter.

The plaintiff filed a claim under the policy for $203.75, which was declined, and this action was instituted for $500.

The defendant set up several defenses, none of which I deem it necessary to consider except that under the following provision of the policy:

"In the event of death, loss of limb or sight, or *disability caused by injuries intentionally inflicted upon the insured by himself* or *any other person,* * * * *the company shall pay but one-tenth the amount otherwise payable for such injuries."*

The case was submitted for trial to his Honor Judge Moss of the County Court, without a jury. On August 17, 1927, he filed a decree rendering judgment in favor of

the plaintiff for $406.25, from which the defendant has appealed upon several exceptions; the only one which will be considered is the contention under the defense above stated, that the plaintiff is entitled only to 10 per cent. of the amount otherwise recoverable, as provided in the paragraph of the policy above quoted, in the event that the disability resulted from "injuries intentionally inflicted upon the insured by * * * any other person."

It appears that the defendant admits its liability to the plaintiff in the sum of $109.10; whether it is entitled to more than this depends upon the construction which his Honor, the trial Judge, placed upon the paragraph in the policy above referred to and his conclusions from the evidence.

His Honor, the trial Judge, I think, very properly declared the law, which appears to be well established, and as to which there does not appear to be any controversy between the parties, that where the insured is intentionally injured by another and the injury is not the result of misconduct or an assault by the insured, *but is unforeseen in so far as he is concerned,* the injury is accidental within the meaning of accident policies. Annotation in 20 A. L. R., 1123, citing and digesting an array of decided cases.

He was also entirely correct in holding that where the company defends upon the ground that the injury came within the exception, that is to say, that it was intentionally inflicted upon the insured by "any other person," the burden is upon the company to bring the case within the exception. In other words, the plaintiff makes out a *prima facie* case by proving that the policy was in force at the time and that he suffered an injury. The defendant then assumes the burden of proving that it was inflicted intentionally by another person.

The real question in the case, then, is whether no other reasonable inference can be drawn from the evidence, than that the injury was intentionally inflicted by another.

This is a law case, tried by a Judge without a jury. His findings of fact have the same force and effect as the verdict of a jury; and unless he has committed some error of law, leading him to an erroneous conclusion, or unless the evidence is reasonably susceptible of the opposite conclusion only (which presents a question of law), the judgment must stand, however erroneous it may appear to this Court to have been.

I do not think it is fair to say that the evidence presents a *prima facie* case of *unintentional* injury. It simply presents a case of *injury,* with a *prima facie* liability of the defendant under the policy, to break down which the defendant assumes the burden of showing an *intentional* injury; and in a law case that showing must be so strong as would justify the Judge, upon a trial by jury, in directing a verdict for the defendant.

But assuming that the evidence presents a *prima facie* case of *unintentional* injury, I think that the authorities are conclusive upon the proposition that that is only a presumption, rebuttable by opposing evidence, which may be so conclusive as to completely destroy the presumption.

"When no reasonable man could fail to come to the conclusion that the presumption had been so destroyed, * * * then it would not only be within the power of the Court, but its duty, to order a nonsuit, or direct a verdict for the defendant." *Baker v. Tel. Co.,* 87 S. C., 174; 69 S. E., 151 (Woods, A. J.).

See, also, *Joyner v. South Carolina R. Co.,* 26 S. C., 49; 1 S. E., 52. *Mack v. South Bound R. Co.,* 52 S. C., 323; 29 S. E., 905; 40 L. R. A., 679; 68 Am. St. Rep., 913. *Brown v. Railroad Co.,* 19 S. C., 39. *Parnell v. Atlantic Coast Line R. Co.,* 91 S. C., 270; 74 S. E., 491. *McLeod v. Atlantic Coast Line R. Co.,* 93 S. C., 71; 76 S. E., 19, 705. *McKendree v. Southern States Life Ins. Co.,* 112 S. C., 335; 99 S. E., 806. *New York Life Ins. Co. v. King,* 28 Ga. App., 607; 112 S. E., 383. *Thompson v. Business*

*Men's Ass'n* (Mo. App.), 231 S. W., 1049. *U. S. F. & G. Co. v. Blum* (C. C. A.), 270 F., 946. *Leman v. Insurance Co.,* 46 La. Ann., 1189; 15 So., 388; 24 L. R. A., 589; 49 Am. St. Rep., 348.

Now, with the principle in view, let us examine the evidence. There was no eyewitness to the unwarranted intrusion and attack of the villain except the plaintiff, and his account of them is all that there is. It is substantially as follows:

The plaintiff lived alone; in the early part of the night he was in his home, not having retired; he was attracted by the call of someone coming up into his yard; he answered the call with an inquiry as to the identity of the caller, and was told that he was his son-in-law, which was untrue and evidently assumed to insure admittance; the plaintiff opened his door, and with a scant invitation the intruder was admitted; he announced his intention to kill the plaintiff and immediately attacked him, beating him over the head with a pistol, knocking him down, and shooting him *while he was down;* although battered and bleeding and shot, a tussle ensued and the intruder was ejected or voluntarily withdrew.

This is the evidence from which it is proposed to be decided that it presented the issue of intentional injury so doubtfully as to require a submission of it to a jury, if a jury trial had then been in progress.

His Honor, the trial Judge, held, as a matter of fact, that the evidence showed that the pistol wound, which was the more serious injury, was caused by the accidental discharge of the pistol in the scuffle between the insured and the intruder. I do not think that there is a trace of evidence to sustain this conclusion. The plaintiff's testimony is to the effect that the scuffle in which the pistol is supposed to have been accidentally discharged, did not take place *until after the plaintiff had been threatened with death, beaten over the head with the pistol, knocked down, and shot.*

I quote his testimony on this point from the record:

"Q. Did he attack you? A. Knocked me down.

"Q. What else did he do to you? A. Shot me. * * *

"Q. Which one did he do first? A. Knocked me down first; that is my conviction.

"Q. It is your conviction that he knocked you down first? A. Yes, sir."

It was impossible, therefore, for the pistol to have been discharged in the scuffle, for none had taken place.

Furthermore, the plaintiff was asked:

"Q. Did you hear the report of his pistol? A. Yes, sir.

"Q. *Where did you hear that?* A. *When I was on the floor,* he was beating me in the head with something—"
—*that after that,* he got up from the floor and succeeded, by tussling, in ejecting the intruder from the house. *The only time that a scuffle was had was after the plaintiff had been knocked down and shot.*

His Honor advances two theories, which, to my mind, are quite inconsistent:

(1) That the intruder, as shown by his declaration, "Give up, I am going to kill you tonight," *intended to kill* the plaintiff, and that as his purpose to kill was not accomplished, although he beat the plaintiff over the head with his pistol, knocked him down, and then shot him, he cannot be said to have *intended* these minor injuries, tokens of his affection.

(2) That the intruder *did not intend to kill the plaintiff,* for the reason that he would have shot him as he first entered the room, and therefore could not and did not intend to shoot; that consequently the shooting was accidental and not intentional. As a matter of fact, from the plaintiff's testimony, little time seems to have elapsed, after entering the room, during the *unintentional* and playful intentions of the intruder.

And then follows this remarkable logic:

"Although the assailant declared that he had come to kill plaintiff, *the purpose must have been to knock him uncon- scious and then rob him,* as there was no ill will or bad blood or difficulties which would lead to a fatal attack. If the intention were to rob, *then the blow on the head* and pistol shot wound *would have to be held incidental and accidental.*"

I cannot follow the learned Judge. If the purpose of the intruder was to knock the plaintiff unconscious and then rob him, how is it possible for the blow on the head, how- ever *incidental* to the plan of robbery, to have been *acci- dental?*

Quite a number of cases hold that when the attack of the third person has resulted in death, before the company can be absolved upon the theory of an intentional injury, it must appear that death was intended by the assailant. This prin- ciple, as I understand, is confined to cases like *Utter v. In- surance Co.,* 65 Mich., 545; 32 N. W., 812; 8 Am. St. Rep., 913, where the fatal result was entirely fortuitous, not reasonably to have been anticipated from the attack. That case is distinguished in *Gaynor v. Insurance Co.,* 12 Ga. App., 601; 77 S. E., 1072, where it is held that where the injury has been inflicted with a deadly weapon the same rule as to the presumption of intention applies in accident cases as well as in homicide cases.

That, however, is not the case here; it seems too absurd to hold that if a man intends to kill and fails in his purpose but seriously wounds, he must be absolved from an intention to seriously wound, which is apparent, because he intended to kill and not wound.

It is clear to me that the plaintiff was not entitled to in- demnity for both a disability resulting from an injury and an illness resulting from the same thing.

I think that the judgment should be reversed and that a new trial be granted unless the plaintiff shall, within 10 days after the remittitur shall have been filed, remit all of the

58    JENNINGS *v.* CLOVER LEAF LIFE, ETC., Co.

judgment in excess of $109.10, with interest from August 17, 1927; in that event, that the judgment for that amount stand.

### On Petition for Rehearing

*Per Curiam.* As the question presented by the petition for rehearing was not properly raised by any exception on appeal, it will not be considered.

Petition dismissed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : The only question raised by the petition is whether the plaintiff was entitled to indemnity on account of both *injury* and *illness,* which was allowed by the decree of his Honor the County Judge. There is no contention but that the *illness,* for which indemnity was allowed, was the result of the *injury* for which indemnity also was allowed. For the *injury* indemnity to the amount of $269 was allowed; and for the *consequent* illness, $137.25.

As I endeavored to show in my dissenting opinion, there does not appear to be any doubt but that the policy provides indemnity for a disability resulting from *accidental causes* and a disability resulting from *disease or illness.* If the disease or illness was separate and distinct from the injury caused by the accident, indemnity upon both accounts could be collected; but where the illness resulted from the accident, I think that it is clear that to allow indemnity for the injury, which necessarily included the consequent illness, and to allow the indemnity for the illness would present a case of double indemnity for the same disability—a duplication.

It is suggested that the exceptions do not bring the question properly for review by this Court. They are not as specific as they might have been, but in so plain a case of error I do not think that this Court should be hypercritical

in order to sustain the judgment. It is not too great a strain to hold that the question may be considered under the fifth exception:

"Because the Court erred in deciding that the plaintiff was entitled to recover any amount under the policy, *either* for sickness, disability, injury, accident, or hospital benefits."

I am greatly dissatisfied with this decision and think, *at the very least,* that the judgment of this Court should require a remission by the plaintiff of $137.25 of the judgment or submit to a new trial.