233 S.C. 376 (1958)
104 S.E.2d 673
Robert E. BROWN and Jerome O'Keefe, Respondents,
v.
STATE FARM MUTUAL AUTOMOBILE LIABILITY INSURANCE COMPANY, Appellant.
17461
Supreme Court of South Carolina.
August 21, 1958.
*377 Messrs. Henderson, Salley & Cushman, of Aiken, for Appellant.
*378 Messrs. Blatt & Fales, of Barnwell, Bell & Bell and George L. Dawson, of Augusta, Georgia, for Respondents.
*379 Messrs. Henderson, Salley & Cushman, of Aiken, for Appellant, in Reply.
August 21, 1958.
MOSS, Justice.
Robert E. Brown, one of the respondents herein, did on April 13, 1957, in the United States District Court for the Eastern District of South Carolina, obtain a judgment against one George H. Lloyd, in the amount of $10,000.00 actual damages and $200.00 punitive damages. The judgment rendered in the United States District Court was upon a cause of action for personal injuries sustained by Robert E. Brown while riding as a passenger in an automobile owned and being operated by George H. Lloyd, when said automobile was involved in an accident which occurred on June 23, 1956. It appears that Robert E. Brown assigned an undivided interest in this judgment to Jerome O'Keefe.
It appears that State Farm Mutual Automobile Liability Insurance Company, the appellant herein, had issued a liability policy of insurance covering the automobile of George H. Lloyd, which applied to the liability of Lloyd to Robert E. Brown, if any such liability existed.
The present action was instituted by Robert E. Brown and Jerome O'Keefe, the respondents herein, against State Farm Mutual Automobile Liability Insurance Company, appellant, to recover the sum of $10,000.00 based on the judgment obtained by Brown against Lloyd. We will, in this opinion, disregard the fact that Jerome O'Keefe is a respondent, and when reference is made to the respondent it will refer to Robert E. Brown. George H. Lloyd will be referred to as the insured. The State Farm Mutual Automobile Liability Insurance Company will be referred to as the insurer, or appellant.
*380 The insurer, by way of answer to the complaint, alleged that it did issue to the insured a standard form automobile liability insurance policy, covering the operation of a 1953 Oldsmobile automobile, and insuring the said insured against liability and damages arising out of an accident occurring during the operation of said automobile in an amount not to exceed $10,000.00 for injuries to any one person. The insurer admitted that on June 23, 1956, the insured was involved in an automobile accident in which the respondent was injured, and as a result of an action tried in the United States District Court a judgment was rendered in favor of the respondent for such injuries and damages sustained by him in said accident. The appellant denied liability on the grounds that the insured had failed to comply with the terms of the policy and that full compliance was a condition precedent to any action against the appellant.
The appellant set up two affirmative defenses. It alleged that the policy of insurance issued to the insured provided as conditions precedent to appellant's liability thereunder, that the insured would give written notice to the insurer when an accident or loss occurs. The policy also provided that the insured would co-operate with the insurer. The policy provisions applicable to these defenses are as follows:
"1. Notice of Accident or Loss. When an accident or loss occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured, and also reasonably obtainable information respecting the time, place, circumstances of the accident, names and addresses of injured persons and available witnesses. In the event of theft, larceny, robbery or pilferage prompt notice shall also be given to the police.
"2. Notice of Claim or Suit  Coverage A and B. The insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.
*381 "5. Action against company. No action shall lie against the company:
"(a) Unless as a condition precedent thereto there shall have been full compliance with all terms of the policy."
The assistance and co-operation clause is as follows:
"6. Assistance and co-operation of the insured. The insured shall co-operate with the company and upon its request, attend hearings, and trials, assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."
The answer alleged that the insured did not give written notice of the accident or loss to the applicant for more than four months after said accident. It was also alleged that the insured did, on October 25, 1956, give to the appellant a written statement of the facts involved in the accident in question, in which he exculpated himself from liability. Thereafter, at the trial of the case, he testified that he could not and did not remember how the accident occurred. Appellant asserts that the failure to give notice of the accident or loss, and the failure to co-operate, constituted a direct violation of the explicit conditions contained in said policy of insurance and relieved the appellant of any liability thereunder. The appellant also alleged that the insured authorized it to investigate, negotiate, settle, deny or defend the action in the United States District Court and that in so doing the Company did not waive any of its rights under the contract of insurance.
At the trial of this case in the lower Court, there was admitted, over the objection of the appellant, evidence tending to show waiver of the policy conditions respecting written notice of the accident, and also evidence showing the giving of oral notice of the happening of the accident. The trial Judge charged the jury as follows:
"If you find that the notice was given as soon as practicable, why then, of course, the defendant will have failed to make out that defense. If you find the notice was not given *382 by Lloyd as soon as practicable, why then, the plaintiffs in this case would not be permitted to recover, unless you find that the defendant has waived that requirement. An insurer may waive a provision in a policy of insurance made for its benefit. Waiver is to give up a right one has intentionally. It is a voluntary intentional relinquishment of a known right, therefore, if you find that a written notice was not given in writing as soon as it was practicable to have been done you then decide whether or not the company, through its agents, has given up, or waived, or relinquished a right it originally had to insist upon written notice as soon as practicable."
The appellant made timely motions for a nonsuit, for a directed verdict and for judgment non obstante veredicto, or in the alternative, for a new trial, upon the grounds that the evidence is susceptible of no other reasonable inference but that the insured did not give written notice as soon as it was practicable to do so, and that the insured failed to cooperate in the defense of the action in the United States District Court. All of such motions were denied by the trial Judge and this appeal followed.
Three questions arise upon this appeal. (1) Did it constitute prejudicial error for the trial Judge to admit, over objection, evidence tending to show waiver by the insurer of the policy requirements respecting the giving of written notice to the insurer as soon as practicable by the insured or someone in his behalf of the happening of an accident; and in connection therewith, to admit, over objection, testimony showing the giving of oral notice over the telephone of the happening of the accident to the insurer by a person acting on behalf of the insured; and, thereafter, to submit for the consideration of the jury the issue of such waiver and the evidence with respect thereto in the giving of verbal notice? In connection with this question the issue is raised as to whether evidence of waiver could be introduced under the pleadings. (2) Did the Circuit Judge err in failing to hold as a matter of law that the insured did not give the *383 appellant written notice of the accident as soon as practicable as required by the terms of the insurance policy? (3) Did the Circuit Judge err in failing to hold as a matter of law that the insured did not co-operate with the appellant as required by the terms of the insurance policy?
The appellant asserts that the respondent had no right to introduce any evidence of waiver of the conditions contained in the policy for the reason waiver was not pleaded in the complaint.
The complaint alleges that "the said George H. Lloyd at all times completely and fully complied with and performed all of the terms and conditions set forth in the aforesaid policy of liability insurance. * * *" This is an allegation of the performance of all conditions precedent. The appellant specifically denies this allegation of the complaint. It also asserts that the insured did not give to it written notice of the accident as soon as practicable, which failure constituted a violation of the explicit condition contained in said policy, thereby relieving the appellant of liability thereunder.
Section 10-673 of the 1952 Code of Laws provides:
"In pleading the performance of conditions precedent in a contract it shall not be necessary to state the facts showing such performance but it may be stated generally that the party duly performed all the conditions on his part. If such allegation be controverted the party pleading shall be bound to establish on the trial the facts showing such performance."
The complaint of the respondent has complied with the requirements of the above quoted section of the Code. The answer of the appellant, following proper practice, set up affirmatively, in its second defense, that there was no liability under the contract of insurance for the reason that no written notice of the accident or loss was given by the insured. If the appellant desired a reply to this new matter set forth in its answer, then it should have made a motion, pursuant to Section 10-661 of the 1952 *384 Code of Laws of South Carolina, to require the respondent to reply thereto. Powell v. Continental Insurance Company, 97 S.C. 375, 81 S.E. 654. The appellant did not avail itself of this remedy. The respondent had no right to reply to this defense, and under Section 10-608 of the 1952 Code of Laws of South Carolina, this new matter in the answer was deemed to be controverted or denied by the respondent.
The liability policy in this case provides that: "When an accident or loss occurs, written notice shall be given by or on behalf of the insured to the company, or any of its authorized agents, as soon as practicable." It is then provided that no action would lie against the appellant "unless as a condition precedent thereto there shall have been full compliance with all the terms of the policy."
This Court has held that conditions precedent may be waived. Fender v. New York Life Ins. Co., 158 S.C. 331, 155 S.E. 577; Rogers v. Atlantic Life Ins. Co., 135 S.C. 89, 133 S.E. 215, 45 A.L.R. 1172; Jennings v. Clover Leaf Life & Casualty Co., 146 S.C. 41, 143 S.E. 668; and Welch v. New York Life Ins. Co., 183 S.C. 9, 189 S.E. 809.
The respondent offered as evidence, by agreement, a specimen liability insurance policy, the one issued to the insured having been lost in the accident or misplaced. This policy contained the provision above quoted as to the giving of written notice in case of an accident or loss. The insured testified that there was attached to his policy a "Members Identification Card" and that provision 3 of this card read as follows:
"If you have an accident

* * *
"3. Report accident to your State Farm Agent promptly. (If anyone is injured, phone the nearest State Farm Agent or Claim Office * * * immediately. If unlisted, call information in nearest large town.)" Emphasis added.
*385 Prior to the insured testifying as to the issuance to him of the policy with the aforesaid card attached thereto, two former agents of appellant testified that there was issued with each liability policy of the appellant a similar card affixed thereto by staple. The appellant objected to the introduction of this card in evidence. The following took place when the respondent tendered evidence showing the giving of oral notice of the accident by telephone to the appellant:
"Q. As a result of your conversation with Sergeant Lloyd did he make any requests of you? A. Yes, sir.
"Q. As a result of the request he made, what did you do? A. That night after I left the hospital I went to Bath, South Carolina, Green's Garage No.2, said I wanted to get Sergeant Lloyd's clothes and his insurance papers. They said I could not bother the car the M.P.'s had taken it over.
The next morning I called General Motors and told them I wanted to report an accident, Sergeant Lloyd had requested.
"Q. What information (insurance?) did they have? A. Collision coverage, I called State Farm Mutual Marion Building in the claim department.
"Mr. Cushman: The provisions of the policy have been given about the written notice.
"The Court: You are attempting to show in the nature of a waiver?
"Mr. Blatt, Jr.: Yes, sir.
"The Court: I think it is admissible. We will see the extent of it."
After the trial Judge had ruled that the testimony of the oral notice was admissible, the following testimony was given by the witness Creed:
"Q. You stated you called as a result of a request by Sergeant Lloyd you called State Farm Mutual Insurance Company, claims department, in the Marion building? A. Yes, sir.
*386 "Q. Tell the jury of your conversation? A. This lady answered the telephone. I told her I wanted to report an accident that happened close to Jackson, South Carolina.
"Q. Did she identify herself? A. No, sir, except State Farm automobile insurance company.

* * *
"Q. Tell us again? A. I told her by request of Sergeant Lloyd I wanted to report an accident that happened on Saturday night or early Sunday. She asked me the time I said I didn't know it. That was on Monday morning between nine and nine-thirty. She also asked me if I had the policy number. I said I did not all I knew they had the liability coverage on the policy, he requested I call, I had been to Bath to get the policy to give to them and it wasn't in the car. The mechanic said the M.P.'s had took over the car. She asked my telephone number, name and address. I gave it to her. She asked me about anybody getting hurt, I said I didn't know the amount of damage, she said that would be sufficient.
"Q. Did you tell her Lloyd was hurt? A. Yes, sir, at the Fort Gordon hospital.
"Q. Did you tell her there were others? A. I said three to four.
"Q. She said that would be sufficient? A. Yes, sir."
It can be concluded from the testimony of the witness Creed that, pursuant to a request of the insured, he notified the appellant of the accident by calling the claims department and advising the clerk who answered the telephone that the insured and others had been injured in an accident. This witness also testified that the clerk said that the information he had given her would be sufficient.
Mrs. Marion C. Brown, a witness for the respondent, testified that she called the office of the appellant in North Augusta, South Carolina, and also in Augusta, Georgia. She notified the clerk who answered the telephone that the insured had been injured in an accident and that he had his *387 neck broken and he could not make the report himself. She testified that she gave it notice that her son had been injured in the accident.
There can be no question that there was sufficient evidence to be submitted to the jury that the insured had caused oral notice of his accident to be reported to the appellant, and that the insured and others were injured in said accident.
We assume, without deciding, that the condition named in the policy of giving written notice of an accident, or the condition in the "Members Identification Card" requiring the giving of notice by telephone, were conditions precedent to liability of the appellant under the policy. We likewise assume, without deciding, that the burden of proof was upon the respondent to show compliance with these conditions precedent.
The appellant asserts that the burden was upon the respondent to show that the insured had given written notice of the accident and had no right to introduce any evidence of the waiver of this condition for the reason that waiver had not been alleged in the complaint. The only evidence of waiver that the respondent offered was that there was attached to the liability policy issued to the insured a "Members Identification Card", which directed that in case of accident, if anyone was injured, that the accident be reported by phoning the nearest State Farm agent or claim office immediately.
It is apparent that there is a conflict between the policy provision for written notice of an accident or loss and the "Members Identification Card" attached to the policy, which provides for oral notice by telephone if anyone is injured. What effect should be given to the "Members Identification Card" attached to the policy?
We think the true rule is expressed in 128 A.L.R. at page 1034, where it is said:
*388 "As a general rule, where a rider, slip, or indorsement is physically attached to a policy of insurance contemporaneous with execution, and delivered to the insured as attached, and sufficient reference is made in either the policy or the attached matter to identify the papers as related, the fact that the matter so attached is without the signature of the insurer or its authorized agents will preclude its inclusion and construction as a part of the insurance contract."
In I Couch on Insurance, paragraph 159, it is said:
"Since the policy is the contract, outside papers, such as riders and slips, to be considered a part thereof, must be so clearly imported into it as to leave no doubt of the intention of the parties. In fact, when there is a doubt as to the intention of the parties to treat the paper as a part of the policy, the courts give the benefit of the doubt to the insured, and construe the policy liberally in his favor." And, as there also stated: "Whether or not a rider constitutes a part of the contract of insurance is for the court, where the facts are uncontroverted. On the other hand, whether or not the rider attached to a policy has been accepted as a part of the contract, and whether or not it represents the agreement of the parties, so as to bind them, is for the jury, where the determination involves questions of fact."
In the case of Provident Life & Accident Ins. Co. v. Anderson, 4 Cir., 166 F. (2d) 492, it was held that a stamped notation on a life policy is a part of the contract of insurance. In this connection, see also the case of New York Life Ins. Co. v. Hiatt, 9 Cir., 140 F. (2d) 752, 168 A.L. R. 551; Walker v. Commercial Casualty Ins. Co., 191 S.C. 187, 4 S.E. (2d) 248.
In Hessler v. Federal Casualty Co., 190 Ind. 68, 129 N.E. 325, 14 A.L.R. 1329, it was held that matter printed on the back of the policy, purporting to be a summary of what was embraced in it, constituted a part of the contract and controlled over an express provision, printed in the policy in small type, limiting the amount of the coverage in *389 the event of certain accidental deaths enumerated without like limitation in the endorsement.
In the case of General Accident Fire & Life Assurance Corporation, etc., v. Morgan, D.C., 33 F. Supp. 190, 192, it was contended that written notice of the accident had not been given in accordance with the terms of the policy. However, an identification card had been attached to the insurer's policy with the same provisions as in this case. The Court, in the cited case, held that this card was a part of the policy, and the card and the policy must be construed together, and that the insurer was estopped from asserting that written notice was required to be given it. The Court there said:
"The argument that written notice was necessary would prevail if the policy stood alone. We cannot overlook the fact, however, that a service card was issued by the company through its general agents at the said time that the endorsement covering the automobile in question was issued. The card contained an instruction, in case of accident, to notify the nearest General Accident representative by phone, wire, or letter giving full details. The general agents had apparently authority to issue it as well as authority to issue the endorsement. A similar service card covering the first insured car was issued by the company through its general agents at the time the original policy was issued. The insured or his legal representative had a right to rely on the instructions contained in the service card. The policy and the service card must be construed together to determine what notice was required in case of an accident. Under the circumstances the plaintiff (Insurer) is estopped from claiming that written notice was required."
In the case of Harwell v. Mutual Benefit Health & Accident Association, 207 S.C. 150, 35 S.E. (2d) 160, 164, 161 A.L.R. 183, this Court said:
"The terms of an insurance policy should be construed most liberally in favor of the insured, and in case of conflict *390 or ambiguity, a construction will not be adopted that will defeat recovery if the policy is susceptible of a meaning that will permit recovery. Insurance companies frame their own policies, use their own language, except when compelled by the legislature to use a standard policy; insert their own complicated, and in some instances obscure and equivocal, conditions; and courts uniformly give the insured the benefit of any doubt in the construction of the terms used in such policy. Walker v. Commercial Casualty Ins. Co., 191 S.C. 187, 4 S.E. (2d) 248; Prosser v. Carolina Mut. Ben. Corporation, 179 S.C. 138, 183 S.E. 710; Parker v. Jefferson Standard Life Ins. Co., 158 S.C. 394, 155 S.E. 617; Jennings v. Clover Leaf Life & Casualty Co., 146 S.C. 41, 143 S.E. 668."
We conclude that there was abundant evidence to submit to the jury on whether or not the insurer had waived the requirement of the policy that the insured furnish written notice of the accident as soon as practicable. We will now consider the question of whether the respondent had the right to introduce evidence of the waiver of this provision of the policy where such was not pleaded in the complaint.
This Court, in numerous cases, has defined waiver as being the intentional relinquishment of a known right. Masonic Temple, Inc., v. Ebert, 199 S.C. 5, 18 S.E. (2d) 584; Ellis v. Metropolitan Casualty Ins. Co. of New York, 187 S.C. 162, 197 S.E. 510.
In the liability policy the provision that the insured shall give written notice of accident as soon as practicable was placed therein for the benefit of the insurer. It could waive this provision by attaching to the policy, as was done in this case, a "Members Identification Card", providing some other method for the giving of notice of accident. We have heretofore recited the evidence showing the attachment of the identification card which provided for oral notice by telephone. Certainly, the insurer *391 had the right to waive the provision of the policy as to the manner of the giving of notice of accident.
In 29 Am. Jur., Insurance, para. 1422, at page 1065, it is said:
"* * * where the complaint in an action on an insurance policy contains no allegation of waiver of a provision of the policy, but the affirmative answer tenders that issue, evidence is properly admissible thereunder in behalf of the plaintiff as rebuttal matter to meet a defense attempted to be raised by the defendant. It has also been held that while the fact of a waiver of a condition as to proof of loss must be specially pleaded and will not be admitted in evidence under allegations of performance, evidence of waiver of mode or manner of making, or sufficiency thereof, may be received in proof under general allegations of performance of conditions. * * *"
The actual controversy, in this case, between the respondent and the appellant, is whether the provision in the liability policy requiring written notice of an accident as soon as practicable was controlling, or whether the attached "Members Identification Card", which provided for the giving of oral notice by telephone, had waived and superseded the provision for written notice. It is the position of the appellant that the provision of the policy and not the provision of the identification card is controlling. The respondent asserts that the provision for written notice as is contained in the policy was no longer a condition precedent. The respondent also asserts that when he complied with the condition or provision contained in the "Members Identification Card" and offered proof of the performance of such condition, he had complied with the condition precedent contained in such identification card. He also asserted that when proof was offered of compliance with the provision and requirement of the identification card, then the respondent had discharged the burden placed upon him by Section 10-673 of the 1952 Code of Laws of South Carolina. The issue thus raised by the pleadings was whether the original condition *392 in the policy of liability insurance was controlling or whether the appellant had waived the performance of this condition by attaching to the said policy a provision providing for the giving of oral notice.
In Williston on Contracts, Volume 3, at page 1938, we find the following:
"By the English common law under an allegation of performance of a condition, proof of waiver or other excuse for its non-performance was not admissible, and the liberalization effected by the Common Law Procedure Acts in allowing a general allegation of performance of conditions did not change this rule. In some American jurisdictions the English rule persists that, under a general allegation of performance of all conditions precedent, proof that performance of a condition has been waived or otherwise excused is held to involve a variance, but more liberal jurisdiction allow such proof on the ground that a condition once `waived' can no longer be a condition precedent."
In this case, under the particular facts herein recited, and the conflicting conditions stated in the policy as to the giving of notice of the accident or loss, we are of the opinion that the Circuit Judge was correct in permitting the respondent to show that the insurer had waived the provision for the giving of written notice by attaching to said policy a provision permitting the giving of oral notice, even though the complaint did not allege waiver.
We think that the proper practice in a case of this nature is for the plaintiff, as was done in this case, pursuant to the provisions of Section 10-673 of the 1952 Code of Laws of South Carolina, to allege performance of all conditions and then for the defendant to set up any conditions which it claims have been broken. In this way the parties to the action know what issues are to be determined. We think that under a general allegation of compliance with all the conditions of the contract, the plaintiff may show waiver under the peculiar facts in this case.
*393 We now consider the question of whether the Circuit Judge committed error in failing to hold as a matter of law that the insured did not give appellant written notice of the accident "as soon as practicable" under the circumstances.
The evidence shows that the insured received serious injuries in the accident which occurred on June 23, 1956, among his injuries being a broken neck and a compound fractured ankle. The insured remained in the hospital at Fort Gordon, Augusta, Georgia, until July 2 or 3, 1956, when he was transferred from the hospital at Fort Gordon to the Brooks Army Hospital at Fort Sam Houston, Texas. The insured remained in the latter hospital until August 27, 1956, when he was released in a brace and sent to a hospital at Fort Hood, Texas, remaining in this brace until November, 1956. The evidence further discloses that from the date of the accident until August 27, 1956, when the insured was transferred to a hospital at Fort Hood, Texas, that he lay flat on his back attached to a swivel bed frame. The evidence reveals that the insured had to learn to walk again. It appears that on October 25, 1956, a representative of the appellant called on the insured in Texas and secured from him a non waiver agreement and a written statement about the accident. It is also in evidence that the insured had requested several persons to notify the appellant of the happening of the accident. One of these persons was the adjuster for the insured's collision carrier. This witness admitted that such a request was made but denied that he had notified the appellant.
In the case of Young v. Travelers Ins. Co., 5 Cir., 119 F. (2d) 877, 880, there is an interesting discussion of the governing principles of construction of the term "as soon as practicable" as used in the notice clause of an automobile liability insurance policy. The Court said:
"The time words in the clause, `as soon as practicable' are not words of precise and definite import. They are roomy words. They provide for more or less free play. They are in *394 their nature ambulatory and subject under the guiding rule, to the impact of particular facts on particular cases. They do not in terms require immediate notice or notice within a particular number of days. They may not be so construed. They do not even provide for notice `as soon as possible.' In terms, they require notice `as soon as practicable' and they must be construed as requiring the notice within a reasonable time under all the circumstances, to effectuate the objects and purposes of the notice clause."
See also in this connection 18 A.L.R. (2d) 443.
This Court, in Walker v. New Amsterdam Casualty Co., 157 S.C. 381, 154 S.E. 221, 224, said:
"This court has held that the stipulation in a contract, like the one in this case, that notice of an injury should be given the insurer immediately by the insured, means that such notice should be given with reasonable promptness under the circumstances. Edgefield Mfg. Co. v. Maryland Casualty Co., 78 S.C. 73, 58 S.E. 969. Whether or not the notice required was given with reasonable promptness under the circumstances is generally a question for the jury. In fact, waiver of the forfeiture of an insurance policy is also most generally a question for the jury's determination. Whaley v. [Guardian Fire] Insurance Co., 124 S.C. 173, 117 S.E. 209."
We agree with the lower Court that the question of whether the insured gave written notice of the accident with reasonable promptness under the circumstances was a question for determination by the jury.
The last question for consideration is whether or not the Circuit Judge committed error in failing to hold as a matter of law that the insured did not cooperate with the appellant as required by the terms of the insurance policy.
It appears from the record that the respondent, with others, was riding as a passenger in insured's car at the time of the accident. The appellant asserts that the material *395 issues for consideration in the trial in the United States District Court related to the speed of the automobile at the time of the accident, the protest of the passengers with respect to such speed, the request of the passengers that they be permitted to leave the car and the refusal of the insured, who was the driver of said car, to grant such request.
It also appears that on October 25, 1956, the insured gave to an agent of the appellant a written statement setting forth at what speed he was operating his automobile at the time of the accident, giving details concerning the failure of the steering mechanism of his automobile to operate properly and his inability because of mechanical failure to turn the wheels of his car, and asserting that none of the passengers complained about the insured's driving of said car. The statement also says that the passengers did not ask the insured to permit them to leave the automobile. The insured signed a statement to the general effect above set forth, and at the end thereof, in his own handwriting, he wrote "I have read this statement and it is true."
It appears that at the request of the attorneys representing the appellant and the insured in the case in the United States District Court, that the insured came from his station in Texas to Aiken, arriving on Saturday, April 6, 1957. The insured went to the office of the attorneys representing him on Monday morning, April 8, 1957. In a conference with the attorneys the insured was questioned about the manner in which the accident happened. He advised the attorneys that he could not remember the details of the accident as he had no recollection of any of the facts from a time before the accident until he woke up after the accident. In explanation of the statement given to an investigator for the appellant on October 25, 1956, he stated that such was based on hearsay information given to him by other people, and that he had no recollection himself of the manner in which the accident occurred. At the trial of the case in the United States District Court, the insured was placed upon the stand and testified that he could not remember any of the details of the *396 accident. He testified that he remembered picking up the respondent and another person. He also testified that he was driving his car and remembered when he turned at Beech Island, and then he said "That is the last thing that I can recall. I don't remember nothing after that; it is all a total blank to me. And, when I come to, Jansen (the other passenger) and some doctor were standing over me." It appears that the insured advised his counsel of the fact that he had no recollection of any of the details of the accident two days prior to the trial of the case in the United States District Court. Appellant asserts that because of the failure of the insured to testify as was set out in his statement of October 25, 1956, that he failed to cooperate with it, in violation of the cooperation clause in the liability insurance policy.
In the case of Meehan v. Commercial Casualty Ins. Co., 166 S.C. 496, 165 S.E. 194, 196, this Court said:
"Ordinarily, therefore, whether or not an insured has performed his duty in each case will present perplexing problems of fact, properly for a jury to determine. Walker v. New Amsterdam [Casualty] Co., 157 S.C. 381, 154 S.E. 221. If there is any contradictory testimony thereabout, it must be submitted to a jury."
In two cases in the State of New York, Seltzer v. Indemnity Insurance Company of North America, and Gilbert against the same defendant, apparently heard together on appeal, 252 N.Y. 330, 169 N.E. 403, 404, it appears that after the commencement of the actions against the insured, based upon a charge of fast driving amounting to negligence, he delivered to the insurer an affidavit in which he swore that, at the time of the accident, he was not driving more than 25 miles an hour, and that no one in the car complained to him about driving too fast, or asked him to drive slower, or otherwise made any remarks whatever to him about driving, but as the time of the trial drew near, he suffered a sudden "loss of memory", making it impossible for him to recollect how fast he was driving or whether or not the occupants of the car warned him. The insured was not called *397 as a witness because of what his testimony would be. In the actions on the liability insurance policies, the trial Judge directed verdicts for the plaintiffs, and upon appeal, the New York Court held that in such subsequent actions against the insurer the question of whether or not the insured by his conduct failed to co-operate with the insurer was a question for the jury. The Court said:
"* * * Wasserman never claimed that he made a false affidavit, but simply stated that he could not remember about the accident in these particulars. We think it was a question for the jury whether Wasserman had actually forgotten or whether he was feigning, falsifying, and wilfully trying to help the plaintiffs to recover against him and thus reach a recovery against the insurance company. To be plain, it is a question for the jury to say whether Wasserman was deliberately aiding the plaintiffs to get money out of the insurance company by making believe that he had forgotten his statements for the insurance company or the facts that might help it and thus failing to render all cooperation and assistance in his power in the defense of the actions."
There is also an interesting case from Rhode Island, Marley v. Bankers' Indemnity Insurance Company, 53 R.I. 289, 166 A. 350, 351. In that case the insured made a report of the accident in which she was involved to the insurer, and had gone to the office of the insurer's attorney and signed a statement which she certified to be true. Two days prior to the day of the trial, the insured was called again to the office of the attorney for the insurer and at this time gave a version of the accident which differed from the statement which she had previously given. Thereupon, the insurer notified the insured that the company would defend the suit against her, reserving its full right to disclaim any and all liability because of the failure of the insured to co-operate with the insurance company. At the trial of the case against her, the insured testified in accordance with the version of the accident which she had given to the attorney two days before the trial began, which differed from the original written *398 statement. The Court held that there was not sufficient evidence of failure to co-operate, and said:
"The insured is bound by the terms of the policy to give in good faith a truthful statement of the accident so that the insurer may be placed in a position to determine whether to defend an action or make a settlement. The insured is not complying with the terms of the policy when he makes a false or misleading statement as to his part in the accident and then testifies in court to the contrary. But the mere fact that his testimony in court under oath and subject to cross examination differs from his previous statement made to the insurer does not warrant the conclusion as a matter of law that the cooperative clause of his policy has been violated. There may be an explanation for the discrepancy, and for this reason when a question of cooperation is raised it usually has to be determined as a question of fact. A person involved in a collision may have a confused and vague recollection of the facts pertaining to the accident. Under these circumstances there is likely to be an inclination to self-exculpation when making a statement not under oath and not subject to cross examination. Reflection and discussion with others who were witnesses to the accident might convince the insured that a prior statement was not in conformity with the facts and could not be maintained when put to the test of trial in court. * * * The insured knew that unless her testimony was in substantial agreement with her previous statement, the insurer would refuse to pay any judgment which might be obtained against her. There was, therefore, a strong incentive to lead her to testify in accordance with her statement made to the defendant. The fact that she did not do so under the circumstances is indicative of a desire on her part to give the facts as she understood them at the time of the trial."
There is a lengthy annotation on the subject of "co-operation" in 34 A.L.R. (2d) 264. We quote from this annotation, section 5, at page 269:
"The courts have failed to find any breach of the co-operation clause in the fact that the insured misstated generally *399 the facts as to an accident so as to relieve him of responsibility therefor, where such misstatement was withdrawn or corrected prior to trial of the action against him."
At the trial of this case in the lower Court, the plaintiff called as a witness a physician who testified as follows:
"Q. Have you recently made any study, at my request, into the effects and possibilities of what you doctors call traumatic amnesia occurring? A. Yes, sir.
"Q. If a man was involved in a serious car accident in which he sustained a broken neck and knocked unconscious, is it entirely possible he might not only not know what happened at the time of the accident, but that for a short period of time prior to the accident he might forget what happened for a few minutes before the accident? A. Yes, sir.
"Q. How long sometimes do people involved in a serious accident with a busted neck have traumatic amnesia? A. They forget.
"Mr. Cushman: I object.
"The Court: He is not asking after the patient, he is asking from a medical standpoint.
"Q. Explain for the jury what traumatic amnesia is? A. When an individual is knocked unconscious he may develop traumatic amnesia and amnesia is the term which is applied to loss of memory for a certain length of time or plain loss of memory. In people who have had brain injuries they at times will have a loss of memory for a variable period of time starting with the accident or I should say they may not remember anything about the accident or for several minutes up to a half hour prior to the accident, or anything that occurred during that time."
We think that under the factual situation shown in this case, the trial Judge properly submitted to the jury the question of whether the insured had violated the co-operation clause of the liability insurance policy.
All exceptions are overruled and the judgment below is affirmed.
*400 STUKES, C.J., and TAYLOR and OXNER, JJ., concur.
LEGGE, J., concurs in result.