15389

S. S. NEWELL & CO. v. AMERICAN MUT. LIABILITY INS. CO.

19 S. E. (2d), 463

 September, 1941. 

*Mr. Stephen Nettles,* of Greenville, and *Mr. William Elliott, Jr.,* of Columbia, for appellant.

*Messrs. Price & Poag,* of Greenville, for respondent, ██

Counsel for appellant, in reply brief, 

March 16, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

The defendant, American Mutual Liability Insurance Company, on or about July 1, 1939, issued and delivered to the plaintiff, S. S. Newell & Company, a public liability insurance policy, for a term of one year. Some ten months later, in April, 1940, the Newell Company, a corporation engaged in the construction and paving of highways, entered into a contract with the State Highway Department to grade

and surface treat an 18 mile stretch of highway in Hampton and Jasper Counties. This contract required and obligated the contractor to "maintain in good condition and satisfactory to the engineer, the entire highway within the limits of his contract, from the time he first begins work until all work has been completed, including maintenance under traffic for at least thirty (30) calendar days."

Newell & Company sublet the concrete and culvert work provided for in the contract to the firm of Pennell & Harley, and they commenced this work on the highway on May 17, 1940. Three days later, on May 19, several persons riding in an automobile on the 18 mile section of roadway were injured when the car ran into a hole in the road which had been there for at least a week prior to the time Pennell & Harley commenced their culvert work. This hole, and the scene of the accident, was at least 12 miles distant from the place where Pennell & Harley were actually engaged in their operations. The occupants of the automobile who were injured brought suit against Newell & Company, the contractor, for damages, upon the ground that it had failed, as contractor, to maintain the highway in a proper state of repair, and had failed and neglected to safeguard the public under its contract with the highway department. Newell & Company thereupon demanded of the defendant that it assume liability under the policy issued by it, but liability was denied for the reasons hereinafter appearing. Following this denial, Newell & Company compromised and settled the various actions, and then brought this action on the insurance policy against the defendant to recover the aggregate amount of the settlement, including attorney's fees. In the trial below the Insurance Company admitted that the amount of the compromise settlements effected by Newell and the attorney's fees were reasonable, so that no question thereabout arises on this appeal.

While conceding the reasonableness of the compromise, the insurance company disclaimed liability, first, upon the ground that Newell & Company was not·responsible to the

injured persons because its liability was based solely on the contract with the State Highway Department· to maintain the safety of the highway from and after the time work was commenced thereon, and that Newell had not commenced work when the accident occurred,—the evidence showing that while Pennell & Harley, the sub-contractor, had started the culvert work prior to the accident, Newell's own organization did not actually begin operations until the day following the accident; and, second, even if Newell & Company was liable to the injured persons, the insurance company was not answerable for the reasonable cost of settling the suits, or any amount whatever, because the policy of insurance issued by the defendant to Newell did not cover the latter's contractual obligation to the State Highway Department to maintain the safety of the highway.

Upon the conclusion of the evidence offered by the plaintiff and the defendant, both sides agreed that there was no issue to be submitted to the jury; that the decision of the case rested upon the undisputed testimony, the construction of the insurance policy, and the contract of Newell with the State Highway Department. Counsel for each party made a motion for a directed verdict. The Court refused the motion of the defendant, and directed a verdict for the plaintiff.

On this appeal two questions are raised by the defendant. It is first contended that Newell was not liable for the injuries suffered by the persons in the automobile, caused by the hole in the road, because work had not been commenced by him under his contract with the highway department when the accident occurred. It is alleged that Pennel & Harley were not the agents of Newell; that they were sub-contractors or independent contractors, and that they should be recognized as such. The evidence shows that although Newell's own organization was not set to work upon the highway until the day after the automobile accident, the firm of Pennell & Harley under the authority and direction of Newell, did enter upon the actual work preparatory to construct-

ing a culvert thereon three days before the accident occurred. Newell's contract with the highway department provided (Section 801 of the Standard Specifications): "Any subcontractor will be considered an agent of the principal contractor. * * *"

Another section (Section 712) provided: "Until the acceptance of the work by the engineer as evidenced in writing, it shall be under the charge and care of the contractor."

Under its contract with the highway department, the duty of Newell & Company to maintain the 18 mile stretch of highway attached from the moment it "first begins work." Under this contract as we construe it, when Pennell & Harley went upon the highway on May 17, 1940, and started to work on the culvert, Newell then had the exclusive possession of the entire strip of highway in his charge, and from that moment became liable for injuries resulting from negligence in the maintenance of the highway, or any portion thereof. It is a matter of no importance whether Pennell & Harley be considered a sub-contractor, independent contractor, employee or agent; irrespective of the legal relationship existing between Newell and Pennell & Harley, this latter firm went upon the highway as representatives at least of Newell & Company, and under its direction and authority, to commence the work of construction.

As we view it, the contract between Newell and the highway Department became active in all of its parts and provisions on the day when Pennell & Harley commenced their work. It might be noted in passing, that Pennell & Harley had nothing whatsoever to do with the maintenance of the highway. The persons involved in the accident by reason of a defect in the highway 12 miles distant from the spot where Pennell & Harley were engaged, received no injury due to the latter's negligence. The obligation was upon Newell & Company under its contract with the highway department, to maintain the highway in safety, and that duty attached as soon as work was commenced upon the project.

We regard the next question raised by the appeal as a most serious one. Did the insurance policy issued by the defendant cover the contractual obligation of Newell & Company to the highway department to "maintain in good condition the entire highway" until the completion of the work and for thirty calendar days, under traffic, after completion?

We are not here concerned with that general canon of construction that instruments executed on the same date and evidencing the same contract are to be construed as one transaction with reference to each other; nor is this a case where one instrument may be deemed incorporated in the other by reference, which differentiates it from the cases of *American Mutual Liability Ins. Co., v. Sloan,* 190 S. C., 252, 2 S. E. (2d), 796, and *Mack Mfg. Co. v. Massachusetts Bonding & Insurance Co.,* 103 S. C., 55, 87 S. E., 439. The evidence in this case, as heretofore remarked, shows that the insurance policy was issued ten months before Newell contracted with the highway department, and this highway contract was never shown to the defendant or brought to its attention, directly or indirectly, so as to bring into play either the principle of estoppel or waiver. Nor is there a particle of evidence present to indicate that the parties themselves placed any construction on the policy contract, by course of dealing or otherwise, contrary to the plain import of the language used. It does not appear that the defendant ever issued to Newell & Company an insurance policy covering contractual obligations with the highway department embracing what is called standard specifications and including maintenance.

The policy in question is designated "Contractor's Public Liability Policy." The parts of the policy material to the controversy are as follows:

"American Mutual Liability Insurance Company:

"Hereby agrees with the insured named in the declarations attached hereto and made a part hereof and which by the acceptance of this policy the insured warrants to be true,

as respects bodily injuries, including resulting deaths, sustained by persons, other than employees of the insured, through accidents occurring during the policy period as expressed in Item 2 of the declarations, in the performance of the operations carried on by the insured at the locations and in the business, as described in the declarations, as follows:" (Here is outlined the obligation on the part of the insurance company to settle or defend each claim and each suit which may be.brought against the insured.)

Then follows Item 4 of the declaration, and the classification of operations:

"The description of the insured's work, the location of place or places where such work is to be done, and the estimated remuneration of employees are as stated below: 'Greenville, Greenville County, South Carolina, and elsewhere in South Carolina.' "

## "CLASSIFICATION OF OPERATIONS

"List classifications of operations according to locations as designated above.

"No. 3450—Street or Road Construction or reconstruction—clearing of right-of-way, excavation, filling or grading—(tunneling to be separately rated).

"No. 5506—Street or Road Paving or Repaving, Surfacing or Resurfacing or Scraping—(clearing of right-of-way, earth or rock excavation, filling or grading, tunneling, bridge or culvert building, quarrying, or stone crushing to be separately rated.)"

The vital issue presented here is, whether the foregoing provisions of the insurance policy can be construed to cover "maintenance" of the entire highway within the limits of Newell's contract with the highway department. The plaintiff contends that the policy of insurance covers every risk assumed by Newell under his contract with the department. In our view of this case, this contention cannot be successfully maintained.

A cardinal principle pertaining to the construction and interpretation of insurance contracts is that once the intention of the parties is clearly ascertained from its terms, an insurance policy is to be liberally construed in order to carry out that intention.

However, if not ambiguous or uncertain, the express terms and language the parties have used should be given effect and their intention must be derived from the language employed. If the intention of the parties is clear, the Courts have no authority to change the contract in any particular. The Court has no power to interpolate into the agreement between an insurer and the insured a condition or stipulation not contemplated either by the law or by the contract between the parties. *Walker v. Commercial Casualty Ins. Co.,* 191 S. C., 187, 4 S. E. (2d), 248; *Brown v. Mutual Life Ins. Co. of New York,* 186 S. C., 245, 195 S. E., 552, 29 Am. Jur., Sec. 157, page 172, 17 C. J. S., Contracts, § 296, pages 695-706.

The rule of strict construction against the insurer does not apply where the language used in the policy is so plain and unambiguous as to leave no room for construction. *Prosser v. Carolina Mut. Ben. Corporation,* 179 S. C., 138, 183 S. E., 710; *Parker v. Jefferson Standard Life Ins. Co.,* 158 S. C., 394, 155 S. E., 617. Nor does the rule of strict construction authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.

The judicial function of a Court of law is to enforce an insurance contract as made by the parties, and not to re-write or to distort, under the guise of judicial construction, contracts, the terms of which are plain and unambiguous. It is not the province of the Courts to construe contracts broader than the parties have elected to make them, or to award benefits where none was intended. *Guarantee Co. v. Mechanics' Sav. Bank & Trust Co.,* 183 U. S., 402, 22 S. Ct., 124, 46 L. Ed., 253.

With these recognized principles of construction in mind, we turn to the provisions of the insurance policy itself.

In the "Classification of Operations," the insurer clearly limits its liability to street or road construction or reconstruction, resurfacing, scraping, filling, grading, etc. All of these activities are plainly confined to construction work, and it follows as a matter of course that if any member of the public had been injured through the negligence of the contractor in an area or theater where construction work was in progress, the insurance policy would be deemed to cover Newell's liability therefor. Nowhere in the policy contract, however, does it appear, expressly or by implication, that the coverage of the policy shall be extended to general maintenance of the entire road project, disconnected and disassociated from construction operations. The insurance company, for a consideration presumably bearing just and reasonable relationship to the obligation assumed, beyond doubt contracted to insure Newell against liability for injuries sustained growing out of his construction operations, but the operations covered are limited by the provisions of the policy.

On what just principle can the Court enlarge and broaden the provisions of the policy so as to cover maintenance of the entire 18-mile stretch of highway dissociated from construction, and for thirty calendar days thereafter? We consider that it can be done only by injecting a new clause into a policy which is certain and unambiguous in its plain import.

It is argued for the plaintiff that the defendant knew when it issued the policy to Newell that the latter might obtain thereafter a contract with the highway department at any time during the policy year, and that such contract would include the standard specifications, which required the contractor to maintain the safety of the highway during the progress of the work and for thirty days thereafter. But this leaves the construction of the contract to speculation if not to imagination. It is not only not in evidence that this particular contract of Newell's was ever shown to the in-

surance company, but it does not appear that the company had ever examined the provisions of such a contract. Neither does it appear, as already stated, that the company had ever issued to Newell an insurance policy covering maintenance risks under the standard specifications of the highway department. Even if we can assume for the sake of argument that the insurance company had knowledge of the maintenance provisions in the standard highway contract, this would not have prevented it from limiting and confining its coverage of liability to the things specified in its policy, provided it did not issue its policy in the light of such contract.

Of course, under the facts, Newell's contract could not have been exhibited to the defendant at the time the policy was issued, because it was not entered into until ten months after the issuance of the policy; but even so, Newell, when he obtained the contract, if he had desired additional coverage, could have taken this matter up with the defendant and have had a rider attached to the policy which would have covered such liability. This especially, because Mr. Newell testified that he knew that he was obligated to maintain the road in good condition until the completion of the work, and after.

The highway department in entering into its contract with Newell, left nothing to chance or to speculation. Evidently the highway department did not consider that the general maintenance of a road under construction, still open to the public, was covered and included under general construction provisions. We find that "maintenance" is specifically provided for on the part of the contractor in separate specific provisions of the contract. However, when we turn to examine the provisions of Newell's contract with the insurance company, we find no reference whatever to "maintenance."

It is true that the insurance policy should be construed in that manner which is most favorable to the insured, and if the language of the contract is fairly susceptible of any construction that would make the insurer

responsible for the loss, it would be the duty of the Court to place such construction upon it. But as heretofore adverted to, Courts cannot undertake to make a new contract in disregard of the plain and unambiguous language used by the parties. In our opinion, the plain meaning of the language found in the insurance policy excludes any liability for maintenance by Newell, other than that connected with and growing out of construction work.

It therefore follows that the lower Court erred in directing a verdict for the plaintiff instead of for the defendant.

Judgment reversed, and case remanded for entry of judgment in favor of the defendant.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE, concur.