17021

R. H. FOSTER, Respondent, v. CANAL INSURANCE COMPANY, INC., Appellant

(88 S. E. (2d) 59)

*Messrs. Joseph H. Hall,* of Gaffney, and *Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

*Messrs. J. Claude Fort* and *E. W. McMillan,* of Gaffney, and *J. Hertz Brown,* of Spartanburg, *for Respondent,*

June 20, 1955.

Legge, Justice.

Respondent, an undertaker in the city of Gaffney, S. C., brought this action on a policy of insurance issued by appellant on September 6, 1949, covering his 1941 Cadillac Funeral Coach against loss or damage by fire for one year from that date. The complaint alleged that on or about the date mentioned respondent, in connection with a loan then obtained by him from Stephenson Finance Company, gave to that company a mortgage covering certain automobiles, including the funeral coach, and securing his note in an amount sufficient to cover the principal sum borrowed, plus interest, closing costs, and the premium on a policy insuring the funeral coach against fire and theft to the amount of $1,000.00, which policy Stephenson Finance Company was to procure and did procure from appellant; that the policy, with provision for payment of loss to respondent and Stephenson Finance Company as their respective interests might appear, had been delivered to Stephenson Finance Company as mortgagee and that respondent had never seen it or had possession of it; that on August 20, 1950, the policy being in force, the said vehicle was totally destroyed by fire at Culpepper, Virginia; and that appellant had refused respondent's demand for payment of the loss. Judgment was prayed in the amount of $1,000.00 with interest from August 20, 1950.

In its answer, appellant alleged that the policy, in which the vehicle was described as an ambulance, had been issued through its agent at Gaffney upon the request of Stephenson Finance Company, and that at no time had the defendant or its agent at Gaffney had any dealings with respondent in connection with its issuance or with the receipt of

the premium therefor; that subsequent to its issuance, and before the alleged loss, the policy had been cancelled at the request of Stephenson Finance Company and the unearned premium refunded to that company; and further, that the loss was not covered because the policy contained a provision excluding coverage beyond a radius of fifty miles. Replying, respondent alleged that whatever may have taken place between appellant and Stephenson Finance Company relative to cancellation of the policy and refund of unearned premium was without his knowledge or consent; that he had never had possession of the policy and that he knew nothing of the alleged area limitation provision; and that in connection with the ordinary operation of his funeral home business it became necessary at times for his ambulance to make trips outside of the city of Gaffney and insurance was desired to cover it while so operated, without restriction, of which circumstances appellant knew or by ordinary inquiry and the exercise of due diligence could have learned.

Respondent, a graduate of Allen University in Columbia, S. C., attended the New York Training School for Embalmers for two years, and thereafter, since August, 1920, has owned and operated in Gaffney a funeral.home for colored people. The substance of his testimony follows:

"On or about September 6, 1949, he conferred with Mr. Stephenson at the office of Stephenson Finance Company in Gaffney with regard to obtaining a loan on the Cadillac funeral coach or ambulance for the purpose of paying off the balance of an indebtedness owing by respondent to C. I. T. corporation of Atlanta, Ga. Incident to the C. I. T. loan was a policy of insurance on the vehicle, which expired that day. Mr. Stephenson informed respondent that his company did not lend money on ambulances, but that because of his previous satisfactory business relations with respondent he would agree to a loan on the ambulance provided a certain Hudson automobile were put up as additional security. The ambulance was to be insured in connection with the loan. Respondent having agreed to this, Mr. Steph-

enson instructed Mr. McDowell, the manager of the Gaffney branch of Stephenson Finance Company, to make out the necessary papers; and from that point the transaction was handled between respondent and Mr. McDowell. In respondent's presence Mr. McDowell telephoned Gaffney Insurance Agency, which agreed to write the insurance and later, having calculated the premium, called back and advised Mr. McDowell the amount of it. He then calculated the amount of the note to be signed by respondent, which included, as before stated, the amount of the premium; and gave respondent a check for the premium, which respondent thereupon delivered to Gaffney Insurance Agency. Respondent understood from Mr. McDowell that, as had been the case in previous transactions with respondent, Stephenson Finance Company would get the original policy and respondent a duplicate.

"Respondent did not receive the duplicate policy, and made no inquiry of either Gaffney Insurance Agency or of Stephenson Finance Company concerning it, nor did he ever see, or ask to see, the original policy, which he 'understood' was in the possession of Stephenson Finance Company.

"On July 11, 1950, he completed repayment of the loan to Stephenson Finance Company, and obtained from that company a new loan, secured by the same two vehicles. He testified that nothing was said at that time about the insurance on the Cadillac; but according to his recollection insurance was required on the Hudson.

"Respondent had previously had numerous transactions with Stephenson Finance Company, involving the financing of other cars; and Stephenson Finance Company knew that the funeral coach was used both as a hearse and as an ambulance, and that as an ambulance it was often operated at distances of more than 50 miles from Gaffney. In the discussions with Mr. Stephenson and Mr. McDowell incident to the loan of September 6, 1949, nothing was said about area limitation on the operation of the ambulance.

"The premium on the policy covering the Cadillac in connection with the loan of September 6, 1949, was $121.00, and this amount was included in the note to Stephenson Finance Company executed by respondent on that day. When respondent obtained the new loan on July 11, 1950, Mr. McDowell, with whom the transaction was had, said nothing to him about having the policy on the Cadillac cancelled and crediting respondent with the return premium, and so far as respondent knows he has never received any credit for the return premium.

"At the time respondent obtained the loan of September 6, 1949, he knew that Stephenson Finance Company was going to procure the policy of insurance from Canal Insurance Company through Gaffney Insurance Agency.

"Respondent's son was in charge of the Cadillac ambulance on the trip to Culpepper, Virginia, where it burned on August 20, 1950. Its value at that time was $1,500.00. The loss was reported to respondent on that day, and the following day he reported it by telephone to Stephenson Finance Company. Next day he was called on the telephone by someone at the office of Stephenson Finance Company and informed that the policy could not be found and was thought to have been cancelled."

In addition to this testimony, respondent placed in evidence the original policy of insurance (which appellant had, upon request, produced), containing on its face, among others, the following provisions:

"Name of insured: R. H. Foster, Gaffney, S. C.

Garage: The automobile will be principally garaged in the above town or city, county and state, unless otherwise stated herein.

Occupation of insured: Owner Foster Funeral Home.

Loss payable to insured and Stephenson Finance Company, as interest may appear.

Policy period: Noon September 6, 1949, to 12:01 a.m. September 6, 1950.

| Coverages | Limits of Liability | Premium |
|---|---|---|
| Collision or upset | Actual cash value less $100.00 | $86.00 |
| Fire, lighting and transportation | 1,000.00 | 25.00 |
| Theft | 1,000.00 | 10.00 |
| | Total | 121.00 |

Description of automobile: 1941 Cadillac Ambulance Motor No. 3342099

Cost new: $3,000.00

Amount of existing encumbrance: $1,020.00 payable in 12 instalments of $85.00 each.

Purposes for which automobile is to be used: Commercial."

The policy is countersigned at Greenville, S. C., the home office of appellant company, under date September 6, 1949; and attached to it are two endorsements each countersigned and issued on the said date. One states that it is agreed that the amount of collision coverage is limited to $1,000.00, the amount of the fire and theft coverage, instead of actual cash value. The other reads as follows:

"In consideration of the premium charged for policy to which this endorsement is attached, it is understood and agreed that insurance does not apply if any commercial vehicle described in policy is operated beyond a radius of .50 miles. This endorsement to be effective as of noon of the 6th day of Sept. 1949. All other terms and conditions unchanged."

Upon this evidence respondent rested his case, and appellant thereupon unsuccessfully moved for a nonsuit upon the ground that respondent had failed to establish a claim upon which relief could be granted, and specifically that his recovery was barred by the limitation-of-use endorsement contained in the policy.

For the appellant, Mr. Vincent McDowell, who in 1949 and 1950 had been the manager in charge of the Gaffney

branch of Stephenson Finance Company, testified that he had handled with respondent the loan transaction of September 6, 1949; that although his company, in addition to its business of lending money, operated an insurance agency, it did not write insurance on the type of risk involved in that transaction; that he had advised respondent that insurance on the Cadillac would be necessary and that there were only one or two agencies in Gaffney that wrote that type of risk; and that in respondent's presence he had called the Gaffney Insurance Agency and requested the issuance of a policy. In response to the question by appellant's counsel: "What type of policy did you request?", he replied: "Well, one that would be a little cheaper, so we requested the stated-amount policy, just a regular limited policy, and it would be a little cheaper." He testified that a few days later Stephenson Finance Company received the policy from Gaffney Insurance Agency, and filed it with the other papers pertaining to respondent's account. On or about July 11, 1950, witness, as branch manager of Stephenson Finance Company, made another loan to respondent on the security of the same two automobiles, and in connection with that loan requested Gaffney Insurance Agency to cancel the insurance on the Cadillac and remit the unearned premium to Stephenson Finance Company. This refund, amounting to $14.52, was subsequently received and credited by Stephenson Finance Company to respondent's account relating to the new loan. As to whether respondent was informed concerning the cancellation, the witness did not testify positively. On cross-examination he identified the account card record of the loan of July 11, 1950, and it was thereupon introduced in evidence by respondent. This record showed the amount of that loan note to be $1,195.20, payable in twelve monthly instalments of $99.60 each, commencing August 11, 1950, and showed a credit by insurance refund of $14.52 on August 10, 1950. The insurance refund, incidentally, was made to Stephenson Finance Company by two checks, as follows: (a) check of Wm. R. Timmons Agency

(the general agency of respondent in Greenville) dated July 19, 1950, payable to the order of Gaffney Insurance Agency in the amount of $12.34 and by it endorsed in blank; and (b) check of Gaffney Insurance Agency dated July 20, 1950, payable to the order of Stephenson Finance Company in the amount of $2.18. According to Mr. McDowell's testimony, the last mentioned check represented part of the commission that Gaffney Insurance Agency had received for writing the policy in question, and was paid to Stephenson Finance Company as a portion of the returned premium. His testimony that Stephenson Finance Company had received no commission in the transaction was uncontradicted.

The testimony of Mr. McDowell was corroborated by that of Mrs. Farish, an employee of Gaffney Insurance Agency, who had handled the transaction for that agency both as to the issuance of the policy and as to its subsequent cancellation and the return of unearned premium to Stephenson Finance Company. She testified further that the daily report, or office copy of the policy, was kept in a file under the name of R. H. Foster, the insured, but that Gaffney Insurance Agency dealt in the matter with Stephenson Finance Company only.

The only other witness for appellant was its assistant secretary, who also managed the underwriting for Wm. R. Timmons Agency. He testified that he had computed the premium on the policy in question, taking into account the area-limitation-of-use endorsement; and that the premium charged for insurance on any commercial vehicle is affected by the radius of operation of such vehicle.

It is interesting to note that no testimony was offered by either party as to whether or not the area-limitation-of-use provision had been discussed in connection with the issuance of the policy, and that under cross-examination Mr. McDowell was unwilling to commit himself as to whether he knew that the policy contained this provision, or as to when, if ever, he had read the policy. To quote briefly from his testimony:

"Q. When did you first read this policy of Canal Insurance Company? A. I don't recall.

"Q. Have you ever read it? A. I have seen it, yes, but not read it entirely. Perhaps I have seen it.

"Q. Well, when did you read any part of it? A. I don't recall the exact date.

"Q. It was after this loss? After the fire? A. I don't recall when it was.

"Q. Mr. McDowell, isn't it true that you didn't know this 50-mile provision was in there until after this suit was brought? A. It was a limited policy requested, sir, to begin with.

"Q. I didn't ask you that, sir. I said that you didn't know that that 50-mile provision was in this policy until after suit was brought, did you? A. I didn't know if it was, because I don't check the policies. That is not my job."

The inescapable inference from respondent's testimony is that, so far as concerned the procurement of the policy, Stephenson Finance Company acted as his agent as well as in its own behalf. The policy, which was placed in evidence by respondent, contained a specific declaration that the automobile in question was to be used for commercial purposes, and a further provision limiting the coverage to a "radius of 50 miles"; and it is conceded that the loss occurred at a point more distant than fifty miles from Gaffney. There is no suggestion, in allegation or proof, that appellant was guilty of any fraud in the transaction or of any breach of its contract. Nor can it be inferred from the mere fact that the 50-mile provision would deprive Stephenson Finance Company of coverage beyond that distance that the contract of insurance as written was the result of mutual mistake on its part and that of appellant. If by the inclusion of such provision respondent failed to obtain the coverage that he expected, the fault may have been that of his agent, but cannot be attributed to appellant under the evidence before us.

We are not inadvertent to the fact that appellant did not deliver the policy, or a duplicate of it, to the respondent, who was the named insured, but was content with delivery of the original, through its agent, to Stephenson Finance Company. But assuming that appellant thereby breached a duty owing by it to respondent, the latter by his own conduct is precluded from asserting such claim in support of the cause of action with which we are now concerned. He is a well-educated man, of some thirty years' experience in business, and according to his own testimony was familiar with financing on the security of motor vehicles and "always carried insurance on my ambulances." He knew that the original policy would be held by Stephenson Finance Company, and he understood that it was in the possession of that company. Yet for more than eleven months he made no effort to read it or to ascertain its contents or to obtain a copy of it; and he cannot now complain of its provisions. *Dukes v. Life Insurance Co. of Virginia*, 184 S. C. 500, 193 S. E. 36; *Able v. Equitable Life Assur. Society*, 186 S. C. 381, 195 S. E. 652; *White v. Southern R. Co.*, 208 S. C. 319, 38 S. E. (2d) 111, 165 A. L. R. 988.

Respondent urges as an additional ground to sustain the judgment below that the limitation of use endorsement is vague and ambiguous, and therefore invalid, in that it does not designate the center from which the "radius of 50 miles" is to be drawn; but in our opinion this endorsement should be construed in connection with the declaration in the policy that the insured vehicle would be principally garaged in the city of Gaffney, and, so construed, was intended to and did limit the coverage to the area comprised within a radius of fifty miles from that city.

As further ground for affirmance, he contends that there was no evidence that the ambulance was in commercial use at the time of its destruction at Culpepper, Virginia, and that the burden was upon appellant to prove such use in order to avail itself of the provisions of such endorsement. While the endorsement does not ex-

pressly provide that the exclusion of coverage should not be applicable in case of noncommercial use beyond the fifty-mile radius, we think that it should be so construed not only because, under the well-settled rule, any doubt as to its meaning should be resolved in favor of the insured, but also because reference in the endorsement to "commercial vehicle" implies commercial use. It is true, of course, that the burden rests upon the insurer to sustain the defense of an excepted risk. *Hawkins v. North Carolina Mutual Life Insurance Co.*, 170 S. C. 478, 170 S. E. 833; *Keistler v. Aetna Insurance Co.*, 124 S. C. 32, 117 S. E. 70. It is true, also, that respondent, not having been questioned as to the purpose of the trip to Culpepper, did not testify on that point. But the express declaration in the policy that "the purposes for which the automobile is to be used are commercial," coupled with the inherent character of the vehicle itself, the allegations of respondent's reply, to which we have earlier referred, and respondent's testimony that it was operated "as a funeral coach and as an ambulance," required the finding (there being no evidence whatever to the contrary) that at the time of the loss the vehicle was being operated commercially.

While it is apparent, as we have pointed out, that in the procurement of the insurance Stephenson Finance Company was the agent of respondent, the evidence does not warrant the inference that it had authority, express or implied, to act for him in regard to its cancellation. But this fact is of no help to respondent in the present action, because even considering the policy as in force at the time of the loss, recovery would be barred by the area-limitation-of-use endorsement.

Reversed and remanded for entry of judgment in favor of appellant under Rule 27.

STUKES, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., did not participate.