17815

A. T. CHARLES, Respondent, v. CANAL INSURANCE
COMPANY, Appellant

(121 S. E. (2d) 200)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, and *Rufus M. Ward,* of Spartanburg, *for Appellant,*

*Messrs. Johnson & Smith,* of Spartanburg, *for Respondent,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, and *Rufus M. Ward,* of Spartanurg, *for Appellant, on Re-hearing,*

August 2, 1961.

JAMES HUGH McFADDIN, Acting Justice.

This appeal is concerned with the amount of appellant's liability to respondent under its policy insuring him against loss or damage to his diesel tractor and trailer by collision or upset. It is undisputed that the loss was within the coverage and was total, except for salvage value. Appellant, contending that the coverage was limited, by a policy endorsement, to $2,000.00 less $250.00 deductible, on each of the two pieces of equipment, moved for judgment in favor of respondent for $3,500.00, and for dismissal of his claim in excess of that amount. Respondent moved for direction of verdict in his favor in the amount of the actual cash value of the tractor and trailer at the time of the loss, August 30, 1958, less the admitted salvage value, $361.00, and less $250.00 admittedly deductible as to each piece of equipment, plus interest from the commencement of the action. The trial judge, refusing appellant's motion and granting that of respondent, submitted the issue of the amount of actual cash value to the jury, who found it to be $8,700.00; and accordingly judgment was ordered against appellant for $7,839.00 with interest and costs. Appeal is from that judgment. The amount of the actual cash value as found by the jury is not questioned.

This appeal requires that we determine whether respondent's motion, or that of appellant, should have been granted. The portions of policy and endorsements which require interpretation to determine the correctness of the judgment below are quoted with certain emphasis and explanation by the writer:

"AUTOMOBILE POLICY
"DECLARATIONS
"Item 2. Policy Period
"From May 29, 1958 to May 29, 1959
"SUBJECT TO PREMIUM PAYMENT ENDORSE-
MENT ATTACHED"

This language is typed in capital letters and its significance will hereafter be referred to.

"Item 3. The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Premiums | Limits of Liability | Net Rates | | Coverages |
|---|---|---|---|---|
| $ | $ | $ | A | Comprehensive—Loss of or damage to the Automobile, except by Collision or Upset but including Fire, Theft and Windstorm |
| $449.35 $307.00 | Actual Cash Value less $250.00 which deductible amount shall be applicable to each Collision or Upset | Class | B | Collision or Upset |
| $ 41.00 $ 47.00 | $2,000.00 | $1.95 - 2.25 | C | Fire, Lightning and Transportation |
| $ Incl. | $2,000.00 | $ .10 | D | Theft (Broad Form) |
| $ 2.00 | $2,000.00 | $ .10 | E | Windstorm, Hail, Earthquake or Explosion |
| $ 2.00 | $ | $ | F | Combined Additional Coverage |
| $ | $10 for each disablement | | G | Towing and Labor Costs May not be written in California |
| $ | $ | $ | | |

$848.35 Total Premium

"Item 4. Description of the automobile and facts respecting its purchase by the insured:

| Car No. | Year of Model | Trade Name | Body Type: Truck Size, Truck Load Capacity; Tank Gallonage Capacity, or Bus Seating Capacity | Motor Number | Serial Number |
|---------|---------------|------------|-------------------------------------------------------------------------------------------------|--------------|---------------|
|         | 1953          | G.M.C.     | Diesel Tractor                                                                                  | 4A33291      | 1465          |
|         | 1953          | Trailmobile | 32 ft. Van                                                                                     |              | 5100600039    |

| If Passenger Car Show Symbol If Commercial Show Original Cost New Including Equipment | Actual Cost When Purchased Including Equipment | Purchased Month, New Year Used | The automobile is unencumbered unless otherwise stated herein: |
|---|---|---|---|
| | $13,000. | | |
| | $ 7,500. | | " |

On another page, where are set out the "Insuring Agreements", the company:

"Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premiums and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

"Insuring Agreements

."I. Coverage A—Comprehensive Loss of or Damage to the Automobile, Except by Collision or Upset: . . . . . . . . . . . . . . .

"Coverage B—Collision or Upset: To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile.

"Coverage C—Fire, Lightning and Transportation: . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Coverage D—Theft (Broad Form) : . . . . . . . . . . . . . . . . .

"Coverage E—Windstorm, Hail, Earthquake or Explosion: ..... ................................

"Coverage F—Combined Additional Coverage: ... .

"Coverage G—Towing and Labor Costs: ........ ....

"II. Loss of Use by Theft—Rental Reimbursement: The Company, following a theft covered under this policy of the entire automobile, shall reimburse the insured for expense not exceeding $5.00 for any one day nor totaling more than $150.00 or the actual cash value of the automobile at time of theft, whichever is less, incurred for the rental of a substitute automobile, including taxicabs. Such reimbursement is payable by the company in addition to the applicable limit of liability of this policy."

"IV. Automatic Insurance for Newly Acquired Automobiles:

"(b) if it is an additional automobile and if the company insures all automobiles owned by the insured and such spouse at such delivery date;

provided, when a limit of liability is expressed in the declarations as a stated amount, such limit shall be replaced by the *actual cash value.*"

"V. Use of Other Automobiles—Collision or Upset Coverage: If the insured is an individual or husband and wife and if during the policy period such insured, or the spouse of such individual if a resident of the same household, owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy *under coverage B* with respect to said automobile applies with respect to any other private passenger automobile while being operated or used by such insured or spouse. The term 'private passenger automobile' means a private passenger, station wagon or jeep type automobile, and also includes any automobile the purposes of use of which is stated *in the declarations* as 'pleasure and business'. Exclusion (b) does not apply to this insuring agreement."

Under "Conditions" on the last page of the policy, which is signed by the Secretary and the President of the Company, is this language:

"1. Insured's Duties When Loss Occurs: When loss occurs, the insured shall:

"(c) File proof of loss with the company within sixty days after the occurrence of loss, unless such time is extended in writing by the company, in the form of a sworn statement of the insured setting forth the interest of the insured and of all others in the property affected, any encumbrances thereon, *the actual cash value thereof at time of loss,* the amount, place, time and cause of such loss, the amount of rental or other expense for which reimbursement is provided under this policy, together with original receipts therefor, and the description and amounts of all other insurance covering such property.

"Upon the company's request, the insured shall exhibit the damaged property to the company and submit to examinations under oath by anyone designated by the company, subscribe the same and produce for the company's examination all pertinent records and *sales invoices* or certified copies if originals be lost, permitting copies thereof to be made, all at such reasonable times and places as the company shall designate.

"2. Appraisal: If the insured and the company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty days after receipt of proof of loss by the company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen days to agree upon such umpire, then, on the request of the insured or the company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. The appraisers shall *then appraise the loss,* stating separately the *actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss.*

"3. Limit of Liability; Settlement Options; No Abandonment: The limit of the company's liability for loss shall not exceed either (1) *the actual cash value of the automobile,* or if the loss is of a part thereof the actual cash value of such part, at time of loss. * * *

"6. Other Insurance: If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability *stated in the declarations* bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

Attached to page 3, in the "Space for Attachment of Endorsements", are two separate endorsements. We are concerned here with only one of them, which reads as follows:

"Endorsement

"In consideration of the premium charged, it is understood and agreed that the amount of insurance provided under the policy to which this endorsement is attached for Coverage B-1, Collision or Upset, subject to deductible amount shown on policy, is limited to the Stated Amount of Insurance for other coverages."

We consider the endorsement above quoted first. It will be observed that it is not the endorsement to which reference is made, in capital typewritten letters under Item 2 in the Declarations of the policy. The applicable law was recently stated by Mr. Justice Moss in *Brown v. State Farm Mutual Insurance Company,* 233 S. C. 376, at page 388 of the South Carolina Reports, 104 S. E. (2d) 673, at page 679:

" 'As a general rule, where a rider, slip, or indorsement is physically attached to a policy of insurance contemporaneous with execution, and delivered to the insured as attached, and sufficient reference is made in either the policy or the attached matter to identify the papers as related, the fact that the matter so attached is without the signature of the insurer or its authorized agents will not preclude its inclusion and construction as a part of the insurance contract.'

"In I Couch on Insurance, paragraph 159, it is said:

" 'Since the policy is the contract, outside papers, such as riders, and slips, to be considered a part thereof, must be so clearly imported into it as to leave no doubt of the intention of the parties. In fact, when there is a doubt as to the intention of the parties to treat the paper as a part of the policy, the courts give the benefit of the doubt to the insured, and construe the policy liberally in his favor.' And, as there also stated: 'Whether or not a rider constitutes a part of the contract of insurance is for the court, where the facts are uncontroverted. On the other hand, whether or not the rider attached to a policy has been accepted as a part of the contract, and whether or not it represents the agreement of the parties, so as to bind them, is for the jury, where the determination involves questions of fact.' "

Since there is no question as to the endorsement being attached at the execution of the policy and signed by the officers of the company, it becomes a matter for interpretation of the language of the endorsement together with the other language of the policy contract. The trial judge bases his denial of appellant's motion upon the grounds that this endorsement was ineffectual because it was without consideration. In our opinion this was error. There was but one contract consisting of the policy which includes the declarations, the insuring agreements, the conditions, the printed endorsements, the exclusions and the attached endorsements. There was but one contract.

Clearly the company had a desire to reduce some part of the coverage. The difficulty in construction is the application of what coverage, if any, was actually reduced and in what amount.

It is elementary and needs no citation of authority that the function of courts is to adjudge and enforce contracts as they are written and entered into by the parties. The court cannot make them for the parties. When such contracts are capable of clear interpretation, the court

cannot exercise its discretion as to the wisdom of such contract or substitute its own for that which was agreed upon, where its provisions are clear, unambiguous and free from doubt. *Brown v. Mutual Life Insurance Co. of N. Y.,* 186 S. C. 245, 195 S. E. 552; *McElmurray v. American Fidelity Fire Ins. Co.,* 236 S. C. 195, 113 S. E. (2d) 528.

Where the language of such contract may be understood in more senses than one or whether it is doubtful whether given words were used in an enlarged or restricted sense, other things being equal, the construction should be adopted which is most beneficial to the insured. *Prosser v. Carolina Mutual Benefit Corp.,* 179 S. C. 138, 183 S. E. 710.

In the construction of insurance contracts in cases of doubt, uncertainty, manifest ambiguity or susceptibility of two equally reasonable interpretations since the language used is the selection and arrangement of the insurer, such contracts must be liberally construed in favor of the insured. *Parker v. Jefferson Standard Life Ins. Co.,* 158 S. C. 394, 155 S. E. 617; *Walker v. Commercial Casualty Ins. Co.,* 191 S. C. 187, 4 S. E. (2d) 248.

Printed insurance contracts prepared by experts in any respect ambiguous or capable of two meanings must be construed in favor of the assured. *Jennings v. Cloverleaf Life & Casualty Co.,* 146 S. C. 41, 143 S. E. 668.

Applying these principles of law to the policy contract and the endorsement, we find that on page one of the policy under "Declarations", there is a premium charge of $449.35 and a premium charge of $307.00 and under "Limitations of Liability" the language reads "actual cash value less $250.00 which deductible amount shall be applicable to each collision or upset." This is clear, unambiguous and leaves nothing to doubt, since the $13,000.00 piece of equipment was insured for the actual cash value less the deductible amount, and the $7,500.00 piece of equipment was insured for the actual cash value less the deductible amount under coverage B, collision or upset.

Under "Insuring Agreements" number II. above quoted, the company limited its payments of rental reimbursement for expenses to $5.00 a day, not more than $150.00 or the *actual cash value of* the automobile. This is clear and unambiguous.

Under IV. (b) "Automatic Insurance for Newly Acquired Automobiles", the contract provided "when a limit of liability is expressed in the declarations as a *stated amount,* such limit shall be replaced by the *actual cash value"*. It is clear that in this agreement the company would replace such limit if actually stated in the Declarations on page one by the figure which would be the *actual cash value.* (Emphasis added.)

Under V: "Use of Other Automobiles—Collision or Upset Coverage" insurance was afforded as was contained under Coverage B. It is seen that the limits are *"actual cash value under the declarations"* for both pieces of equipment. To which of these numerous cash value limitations did the endorsement apply or stated another way, which of these actual cash value insuring agreements did the parties themselves intend that it should apply.

A cardinal principle pertaining to the construction and interpretation of insurance contracts is that once the intention of the parties is clearly ascertained from its terms, an insurance policy is to be liberally construed in order to carry out that intention. *Newell & Co. v. American Mutual Liability Insurance Company,* 199 S. C. 325, 19 S. E. (2d) 463.

It is undisputed that there is no declaration, no insuring agreement and no condition designated "Coverage B-1 Collision or Upset." There is a declaration of Item 3.B, which is actual cash value limit of liability Collision or Upset. There is an insuring agreement paragraph "V. Use of Other Automobiles—Collision or Upset Coverage" where it seemed that the limit would be that which was stated in the declarations.

If, however, we were to conclude that the reference to "B-1 Collision or Upset" had reference to Item 3.B, under Declarations, there is yet still another ambiguity which cannot escape ordinary laymen in the interpretation of plain and unmistakable language and we refer to the language of the endorsement which says *"is limited to the stated amount of insurance for other coverages"*. We ask what stated amount and what other coverages. This language is susceptible to the reasonable interpretation that the limitation is for the total of or other coverages since the draftsmen purposely eliminated the word "each" which should properly appear before the word "other" were it his desire and intention to limit the coverage on each piece of equipment for such figure as appears under the declarations of fire, theft or windstorm. Still another reasonable interpretation of this language is that it refers to "Item 3.F Combined Additional Coverage". There appears to be a $2.00 premium charge for this under the word "premium", although the same is written halfway between the lines "Windstorm and Hail" and "Combined Additional Coverage". It cannot be said that the draftsmen were unfamiliar with the use of the word "each" for we find at the very outset under Item 3 that the policy reads: "The limit of the company's liability against *each* such coverage shall be as stated herein * * *". So it is just as reasonable and perhaps more so to accept what the insured thought was meant by the endorsement, that is to say, that the endorsement limited the liability of each piece of equipment to the combined total, which in the stated amount would be $6,-000.00 each.

It cannot be assumed that the draftsmen of this endorsement were familiar with plurals, because they use the letter "s" on coverages which would certainly indicate that they did not mean and it was not their intention that the *actual cash value* heretofore written so many times was to be reduced by a stated amount of one of the coverages. Appellant attempts to explain the inconsistent provisions in this policy as follows: "In this connection the policy itself, which is a

standard form, was originally drawn up as an automobile policy rather than a policy to cover long haul trucking equipment. By the use of endorsement it can be and is used to insure long haul trucking equipment." The course of action thus adopted is that which was charted by the appellant itself. There is no reason why the endorsement should not be written in such language as to leave it free from two or more reasonable plain interpretations.

Were it the desire and the agreement between the parties to limit the insurance to $2,000.00 on each piece of equipment less the deductible amount, there is ample space under the declarations on page one to have written this figure and it could have been easily typed on the very endorsement which was attached with the language "actual cash value, wherever appearing in this policy is changed to read $2,000.00". The insurer cannot request this court to perform its clerical duties for it or write its endorsements.

This policy together with the endorsements thereon is susceptible to two or more reasonable interpretations as to its meaning and provisions. We are bound by the long and well established rule which we reaffirm:

"The terms of an insurance policy should be construed most liberally in favor of the insured, and in case of conflict or ambiguity, a construction will not be adopted that will defeat recovery if the policy is susceptible of a meaning that will permit recovery. Insurance companies frame their own policies, use their own language, except when compelled by the legislature to use a standard policy; insert their own complicated, and in some instances obscure and equivocal, conditions; and courts uniformly give the insured the benefit of any doubt in the construction of the terms used in such policy. *Walker v. Commercial Casualty Ins. Co.*, 191 S. C. 187, 4 S. E. (2d) 248; *Prosser v. Carolina Mut. Ben. Corporation*, 179 S. C. 138, 183 S. E. 710; *Parker v. Jefferson Standard Life Ins. Co.*, 158 S. C. 394, 155 S. E. 617; *Jennings v. Clover Leaf Life & Casualty Co.*, 146 S. C. 41, 143

S. E. 668." *Brown v. State Farm Mutual Ins. Co.*, 233 S. C. 376, 390, 104 S. E. (2d) 673, 680; *McElmurray v. American Fidelity Fire Ins. Co.*, 236 S. C. 195, 113 S. E. (2d) 528; *Molair v. State Farm Mutual Automobile Liability Ins. Co.*, 235 S. C. 255, 111 S. E. (2d) 518; *Foster v. Canal Ins. Co.*, 227 S. C. 322, 88 S. E. (2d) 59; *Barkley v. International Mutual Ins. Co., Inc.*, 227 S. C. 38, 86 S. E. (2d) 602, 603; *Inman et al. v. Life Ins. Co. of Va.*, 223 S. C. 98, 74 S. E. (2d) 423; *Sloan v. Colonial Life and Accident Ins. Co.*, 222 S. C. 248, 74 S. E. (2d) 446; *Long Motor Lines, Inc. v. Home Fire and Marine Ins. Co. of California*, 220 S. C. 335, 67 S. E. (2d) 512.

The second question raised by the appeal is to determine whether or not the respondent was barred from recovering by his negligent and reckless conduct in keeping the original and renewal contracts in his possession for a period of fifteen months. We have carefully reviewed the cases cited by the appellant to sustain this position, namely *Reid v. George Washington Life Insurance Co.*, 234 S. C. 599, 109 S. E. (2d) 577, in which case the language was not what the policyholder thought it was and obviously has no application to the facts in this case. Also, *Frierson v. Inter-Ocean Casualty Co.*, 168 S. C. 178, 167 S. E. 232, in which case the insured relied upon oral statement of the agent which was in conflict with the written policy contract. To the same effect is *Souba v. Life Ins. Co. of Va.*, 187 S. C. 311, 197 S. E. 826. Other cases cited by appellant are also easily distinguished by the facts of each case.

No case has been cited to this court, and we have been unable to find one, which bars recovery of an ambiguous, unclear and deceptive policy reasonably capable of being interpreted in two or more ways, one favoring the insured and the other favoring the insurance company, in which any court has held that recovery is barred by the mere lapse of time or passiveness or inactivity on the part of the insured. The obligation to reform or to seek ex-

planation of ambiguity in an insurance contract is more on the insurance company, especially in this instance, since they retain the premium for an actual cash value policy and the undisputed testimony is that the insured ordered this type of policy.

For these reasons we conclude that although the trial Judge was in error in basing his decision upon the lack of consideration for the endorsement, he was correct in his interpretation of the policy contract. The exceptions, therefore, are without merit and the judgment below affirmed.

Judgment affirmed.

TAYLOR, C. J., and OXNER, J., concur in result.

LEGGE and Moss, JJ., dissent.

OXNER, Justice (concurring in result).

I concur in the result reached in the leading opinion. I cannot escape the conclusion that this policy is reasonably calculated to mislead the ordinary person applying for insurance. The applicable measure of understanding is not that of one engaged in the insurance business or trained in the law but of a reasonably prudent person applying for an insurance policy.

The collision coverage provided on the face of the policy is clear and unambiguous. The limit of liability is fixed as "Actual Cash Value less $250.00 which deductible amount shall be applicable to each Collision or Upset." Nowhere on this page is there any reference to any endorsement, nor is there anything calling insured's attention to any limitation or restriction on the amount of the coverage. If appellant wished to limit its liability to the sum of $2,000.00 less the deductible sum of $250.00, it could have so provided as it did in the case of the other coverages. Or the insurer could have easily eliminated all deceptive repugnancy by placing a stamp on this page calling attention to the limitations contained in the endorsement. This it did not do. The ordinary layman would have a right to assume that the plain and un-

mistakable language stated on the face of the policy represented the amount of his insurance against collision or upset.

The deceptive nature of the policy is further aggravated by the following on another page under "Conditions":

"3. Limit of Liability: Settlement Options: No Abandonment: The limit of the company's liability for loss shall not exceed either (1) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss or (2) what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, or (3) the applicable limit of liability stated in the declarations."

A case closely akin on the facts is *American Indemnity Co. v. Hood,* 183 Ark. 266, 35 S. W. (2d) 353. There the insured bought an automobile giving to the seller a title retention contract or chattel mortgage for the unpaid portion of the purchase price, amounting to $448.20. Immediately after his purchase he obtained a policy of insurance. In the insuring clause on the face of the policy issued, the Company undertook to insure him against loss by fire of the automobile for three-fourths of its value, not to exceed $448-.20, with loss payable to both him and seller. The policy contained an endorsement stating that its intent was to protect only the interest of the mortgagee and that the liability of the insurer should be automatically reduced by the amount of each payment until the car was fully paid for, at which time insurer's liability should cease. Later the automobile was destroyed by fire. At that time the mortgage indebtedness had been reduced to $112.05. The insurer contended that its liability under the endorsement was only $112.05. It was held that the insurer was liable for the full coverage stated on the face of the policy.

In further support of the view herein expressed, see *Walker v. Commerical Casualty Insurance Co.,* 191 S. C. 187, 4 S. E. (2d) 248; Annotation 168, A. L. R. 555.

The explanation of the inconsistent provisions in this policy is stated by appellant's counsel as follows: "In this case, the policy itself, which is a standard form, was originally drawn up as an automobile policy rather than a policy to cover long haul trucking equipment. By the use of endorsements it can be and is used to insure long haul trucking equipment." But if the appellant wished to use a form not adapted to the character of insurance written, it should have taken proper precautions to see that it was not misleading.

It may be readily conceded that it is not practical to have a policy form covering every insurance need and that the use of endorsements is necessary in the insurance business. There is no reason, however, why this cannot be done in such a manner as not to render the policy deceptive.

TAYLOR, C. J., concurs.

LEGGE, Justice (dissenting).

I regret that I find myself in disagreement with some of the views expressed, and with the conclusion reached in the leading opinion.

Respondent based his complaint on fraud and deceit, seeking damages, actual and punitive, in the amount of $25,000.00. The trial judge held that fraud was not inferable from the evidence, eliminated the claim for punitive damages, granted the motion of the respondent for direction of the verdict in his favor for the amount of the actual cash value of the two pieces of equipment (less $250.00 deductible as to each, and less the admitted salvage value, and plus interest), and submitted for the jury's determination the question of the amount of the actual cash value. From these rulings no appeal was taken by the respondent.

The issue here involved is simply this: Was the amount of the insured's recovery controlled by the provisions of Coverage B, Collision or Upset, as shown on the face of the policy, or by the terms of the endorsement attached to the policy as a part of it at the time of its delivery, which expressly amended those provisions?

Where the language of an insurance contract is free of doubt, it must be given effect. Resort to rules of construction in such case is neither necessary nor proper, for the meaning of the contract is ascertainable from its express and unambiguous words. "The judicial function of a court of law is to enforce an insurance contract as made by the parties, and not to re-write or to distort, under the guise of judicial construction, contracts, the terms of which are plain and unambiguous." *Newell & Co. v. American Mutual Liability Insurance Co.*, 199 S. C. 325, 19 S. E. (2d) 463, 466.

In the case at bar the amount of collision coverage provided for on page one of the policy is plainly stated to be "actual cash value less $250.00". The endorsement attached to the policy, bearing the same date as the policy, and delivered with it, as plainly states that the amount of insurance provided under the policy for "Coverage B-1, Collision or Upset", subject to the deductible amount shown on the policy, is limited to "the stated amount of insurance for other coverages." The other coverages, as shown in the policy, were "Fire, Lightning and Transportation", "Theft (Broad Form)", and "Windstorm, Hail, Earthquake or Explosion"; and the amount of such coverage in each case was stated to be $2,000.00. There is no ambiguity here. The endorsement, in plain language, limits the "Collision or Upset" coverage to $2,000.00, less the deductible $250.00 shown on the policy. It is true, as respondent argues, that to have been strictly accurate the endorsement should have referred to that coverage as "B", not "B-1"; but the variance was, in the opinion of the trial judge, as it is in mine, immaterial and insufficient to render the meaning of the endorsement ambiguous.

The policy, together with its endorsements, constituted the contract between the parties. *Foster v. Canal Insurance Co.*, 227 S. C. 322, 88 S. E. (2d) 59. Cf. *Brown v. State Farm Mutual Insurance Co.*, 233 S. C. 376, 104 S. E. (2d) 673. The usual purpose of an endorsement is to enlarge, restrict, particularize or otherwise modify some provision of the pol-

icy; and it is well settled that the provisions of the endorsement supersede those of the policy with which they are in irreconcilable conflict. Appleman, Insurance Law and Practice, Vol. 13, Section 7537; 29 Am. Jur., Insurance, Section 256; 44 C. J. S., Insurance, § 300; *McIntosh v. Whieldon*, 205 S. C. 119, 30 S. E. (2d) 851; *Jackson v. British America Assurance Co.*, 1895, 106 Mich. 47, 63 N. W. 899, 30 A. L. R. 636; *Wyatt v. Wyatt*, 1953, 239 Minn. 434, 58 N. W. (2d) 873; *Prather v. American Motorists Ins. Co.*, 1949, 2 N. J. 496, 67 A. (2d) 135; *Konrad v. Hartford Accident & Indemnity Co.*, 1956, 11 Ill. App. (2d) 503, 137 N. E. (2d) 855. It is to be noted, in passing, that to this rule there is an exception, applicable in the construction of contracts generally, that where a contract is partly printed and partly written, the written provision will prevail over the printed one in case of irreconcilable conflict between them. Appleman, Insurance Law and Practice, Vol. 13, Section 7522; 12 Am. Jur., Contracts, Section 253; 29 Am. Jur., Insurance, Sections 255, 256. But the exception is of no help to the respondent's case here, for the collision coverage in the policy itself for "Actual Cash Value less $250-.00" is printed, except for the figure $250.00, which is typewritten, and that figure is expressly given effect in the endorsement, which appears to be printed except for typed-in date, place of issue, policy number and name of insured.

The trial judge based his denial of appellant's motion upon the ground that the endorsement was ineffectual because without consideration. I fully agree that this ruling was erroneous. There was but one contract, consisting, as before stated, of the policy and its endorsements; the consideration was the total premium stipulated.

There is no merit in the suggestion that the endorsement limiting the amount of recovery under the collision coverage should be ignored because the premium for that reduced coverage was based upon the cost of the equipment when new and was in the same amount that would have been charged had the coverage been for actual cash value less

$250.00. The testimony is undisputed that under the standard manual of rates as determined by the National Automobile Underwriters' Association and filed with and approved by the South Carolina Insurance Commission the rate for collision coverage of long-haul vehicles, such as those here involved, is calculated on cost new regardless of the actual or stated value at the time of coverage; and that the amount of the premium for such coverage is the same whether the coverage is for actual cash value less $250.00 or for a smaller stated amount. It is undisputed that the premium for such coverage here was properly computed in accordance with the prescribed rating manual. It further appears, without contradiction, that the premium for coverage against "Fire, Lightning and Transportation", "Theft (Broad Form)", and "Windstorm, Hail, Earthquake or Explosion", is based not upon cost new but upon the stated amount of such coverage. It would thus appear that had the respondent taken coverage of the vehicles against fire, theft and windstorm in the amount of actual cash value or in any amount higher than the stated amount of $2,000.00, paying the additional premium for such higher coverage, he would, under the endorsement, have obtained coverage against collision or upset up to the stated amount of the other coverages, without additional premium for the higher collision coverage. It is at least arguable that a contract requiring for collision coverage the same premium whether such coverage be for actual cash value less $250.00 or for the lower stated amount of other coverage, is harsh and inequitable. But that is a matter beyond the proper scope of our inquiry. It is for the parties, not this court, to make the contract; our function is to interpret it and, where its provisions are unambiguous, as they are here, to decree its enforcement. *Mc-Elmurray v. American Fidelity Fire Insurance Co.*, 236 S. C. 195, 113 S. E. (2d) 528.

I respectfully suggest that the leading opinion strays afield from the single issue before noted, *viz.*: Was the insured's recovery for loss resulting from "Collision or Upset" to be

controlled by the provisions of the "Collision or Upset" coverage stated on the face of the policy, or by the provisions of the endorsement limiting that coverage, subject to the deductible amount shown on the policy, to the Stated Amount of insurance for the other coverages, to wit: $2,-000.00?

For example, the statement in Item 2 of the Declarations, that the policy period is "Subject to Premium Payment Endorsement Attached," has nothing whatever to do with the issue here involved. That endorsement was not attached to the policy as presented to this court; but we understand counsel to have conceded in argument that it simply provided that the premium for the policy year should be payable in monthly instalments rather than in one lump sum.

No less irelevant, it seems to me, is the discussion of Paragraphs II, IV (b), and V of the "Insuring Agreements". As quoted in the leading opinion, the "Insuring Agreements" are prefaced by the express statement that they are "subject to the limits of liability, exclusions, conditions and other terms of this policy", which of course include the endorsements "attached to and forming a part of" it. Paragraph II of the "Insuring Agreements" relates to reimbursement for loss of use resulting from theft and, as its language plainly states, the liability of the insurer thereunder is limited to $150.00, unless the actual cash value of the automobile at the time of theft was less than that amount. Paragraph IV (b) of the "Insuring Agreements" relates to automatic coverage of newly acquired automobiles at actual cash value instead of the limit of liability stated in the declarations, and following the portion quoted in the leading opinion, goes on to provide that "the insured shall pay any additional premium required because of the application of the insurance to such other automobile." In other words, under this paragraph of the insuring agreements, a newly acquired automobile would have been covered for its actual cash value against Collision or Upset, Fire, Lightning and Transportation, Theft, Windstorm, Hail, Earthquake or Explosion, and the

insured would have had to pay whatever additional premium was properly required for such coverage. And Paragraph V of the "Insuring Agreements" expressly relates only to private passenger automobiles.

By the same token, the quoted policy provisions under the caption "Conditions", relating to "Insured's Duties When Loss Occurs", "Appraisal", "Limit of Liability", "Settlement Options", "No Abandonment", and "Other Insurance", are, I think, wholly beside the point.

The endorsement with which we are properly concerned relates only to the amount of coverage against "Collision or Upset"; the sole issue is whether that endorsement prevails over the provision in the face of the policy as to the amount of that coverage. As before stated, there is no ambiguity in either of the two conflicting provisions. The rule seems clear that in such case the endorsement controls.

I cannot follow the suggestion that the endorsement fixes the "Collision or Upset" coverage at the total of the three other coverages, i. e., $6,000.00. The insured valued each of the two pieces of equipment (tractor and trailer) at $2,000-.00 for the lesser hazards of fire, theft and windstorm. That amount, $2,000.00, is the "stated amount" for those coverages, as to each piece of equipment; to construe the endorsement limiting coverage against the greater hazard of. collision or upset as effecting coverage for three times that amount seems hardly logical.

As pointed out in the leading opinion, the policy under review is a standard form of automobile policy, and the endorsement in question was used because the property covered was not an automobile of the kind normally contemplated by such form of policy, but long-haul trucking equipment. It is also true that instead of using an endorsement the insurer could have crossed out, on the face of the policy, the printed words "Actual Cash Value", and typed in the figure $2,000.00, in the space for "Limits of Liability" for collision or upset. It is also true that the endorsement in question, in-

stead of limiting the coverage for collision or upset to the amount of the other coverages, could have been phrased to state that the amount of such coverage was $2,000.00 less $250.00 deductible. But discussion of what might have been done is hardly a persuasive approach to the solution of the issue here. Our task should be to construe what is written, not to speculate on what might or should have been written.

In my opinion, respondent's own testimony furnishes no basis for the claim that he was misled. He was neither ignorant nor illiterate; on the contrary, the undisputed evidence reveals him as an experienced businessman; he testified that he made it a practice to read his insurance policies, including their endorsements; that he knew the purpose of endorsements and that they were frequently used to modify the terms of a policy; that endorsements similar to the one in controversy had been attached to policies previously issued to him; and that he had read the endorsement in controversy here, but did not think that it "applied" to his policy. He testified that it was "a little bit confusing", and that it was "possible" that he did not understand it; but his reasons, according to his testimony, for concluding that he was not bound by it, were as follows: (1) that it referred to coverage "B-1", when in fact there was no coverage so designated; and (2) that it led him to believe that it was intended to make the collision coverage the total of the other three coverages, or $6,000.00. The lack of material basis for the first of such reasons, and the illogic of the second, have already been pointed out. And since the endorsement was attached to the policy, his suggestion that it "did not apply" to that policy is equally insubstantial.

Respondent submits, as an "Additional Sustaining Ground", that the trial judge should have submitted to the jury the question of fraud, which had been alleged in the complaint. But this is not a proper "Additional Sustaining Ground"; its acceptance would not lead to the same result that was reached by the trial court. *Colonial Life & Accident Insurance Co. v. South Carolina Tax Commission*, 233

S. C. 129, 103 S. E. (2d) 908; Supreme Court Rule 4, Section 7.

I think that the judgment appealed from should be reversed and the cause remanded for entry of judgment in favor of respondent in the amount of $3,500.00.

Moss, J., concurs.